THE STATE EX REL. HUNT, Appellant, vs. STAFFORD, Respondent.

*December 12, 1903—January 12, 1904.*

*Elections: Caucuses: Nomination by mass convention: Repeal of statute by implication: Constitutional law: Right of elector to have ballot counted.*

1. Ch. 341, Laws of 1899, entitled *"An act relating to caucuses* and amending" secs. 11a–11i, Stats. 1898, provided that "caucuses. and meetings of political parties held for the purpose of nominating candidates or choosing delegates to assemble in convention to nominate any person for any general public office, to be voted for at any general . . . election . . . and all meetings for nominating candidates or choosing delegates to. conventions to nominate candidates to be voted for at such elections, *commonly called caucuses,* unless held under the provisions of this act, are hereby declared to be *unlawful,* and no political party shall have its political ticket *placed upon the official ballot or canvassed* at such election, unless the nomination of its candidates are made in accordance with the provisions of this act;" and repealed secs. 11a–11i and *all acts and parts of acts in conflict with its provisions.* The first general law regulating caucuses and political meetings, was ch. 312, Laws of 1897, and with some modifications its provisions were incorporated into the revision of 1898 as secs. 11a–11i, of ch. 5, Stats. 1898, and the title of the chapter was changed from "Of Electors and General Elections" to "Of Caucuses, Electors, and General Elections." Sec. 30, Stats. 1898, provides that "candidates to be voted for" at general elections "may be nominated . . . by a convention or primary meeting, held for the purpose, consisting of an organized assemblage of electors." Sec. 31, Stats. 1898, provides for certifying the result of "nominations made by a convention;" sec. 40 prescribes the form of official ballots; and sec. 41 provides for the preparation of the official ballots and the voting and counting of the same, but neither of said sections is referred to in ch. 341, Laws of 1899, and all of them were in existence prior to the adoption of ch. 312, Laws of 1897. The day after ch. 341 was approved two other acts were also approved, the first (ch. 349) relating to. official ballots and amending six sections of the Statutes of 1898, other than secs. 30, 31 and 41; and the second (ch. 351) amending sec. 30 by changing the percentage of voters necessary to entitle a political party to a place on the official ballot,.

leaving the section otherwise unchanged. Ch. 457, Laws of 1901, also amended secs. 36–38, 40, Stats. 1898, as amended by ch. 349, Laws of 1899, relating to the form of the official ballot. *Held*, that nominations by mass conventions, provided for by sec. 30, Stats. 1898, were not abolished by the general repealing clause contained in ch. 341, Laws of 1899, and that a person so nominated, whose name appeared upon the official ballots and who received a majority of all the votes cast for the office for which he was a candidate, was duly elected and entitled to hold the office.

[2. Whether ch. 341, Laws of 1899, is constitutional, not determined.]

[3. MARSHAL, J., is of the opinion that the provision of sec. 30, Stats. 1898, authorizing nominations by mass conventions has been repealed by ch. 341, Laws of 1899, but that the constitutional right of an elector to participate with effect in elections, so far as having his choice of candidates regarded, is so far removed from legislative interference that he cannot rightfully be required, by any legislative act, to use a particular form in a particular way for indicating his choice, and thereafter have that choice disregarded because of its being in favor of one whose name was not rightfully on the ballot form placed, by public agencies, in his hands as correct.]

APPEAL from a judgment of the circuit court for Adams county: CHAS. M. WEBB, Circuit Judge. *Affirmed.*

This is an action of *quo warranto* brought to determine the right to the office of sheriff of Adams county, under ch. 149, Stats. 1898, commenced January 7, 1903. The cause, being at issue, was tried by the court, and at the close of the trial the court found as matters of fact, in effect:

(1) That July 10, 1902, the relator was and since has been a resident, citizen, freeholder, qualified elector, and a republican in the county, eligible to hold the office of sheriff therein; (2) that on the day named the relator was nominated for sheriff by the republican convention of that county, duly called and composed of delegates duly chosen by caucuses duly called and held for the several towns in the county, to be voted for at the general election in November, 1902; (3) that there are seventeen towns in Adams county, but no city or village nor any daily newspaper; (4) that no

democratic caucuses were called or held in the county for 1902, for the nomination of delegates to sit in a democratic convention to nominate candidates for county offices to be voted for at the general November election for 1902, and never at any time within the ten years last past had any democratic caucuses been called or held in that county; (5) that pursuant to notice duly published in a weekly newspaper, the democratic party of the county, on August 30, 1902, called a mass convention of that party for the nomination of candidates for the several county offices for the county, including member of assembly, to be voted for at the general November election for 1902; that such convention was called and notice given by the duly authorized democratic county committee; that at the time and place mentioned in such notice, and pursuant thereto, lawful democratic voters from seven of said towns, in pursuance of such notice, assembled in convention, and the same was duly organized, with a chairman and secretary and tellers and other officers, and by ballot nominated a candidate for each of the several county offices, including member of assembly, appointed a committee to represent the party in the county, and exercised the powers and performed the duties of a convention composed of delegates chosen at caucuses; that the defendant was unanimously nominated by such mass convention for the office of sheriff; that such convention was composed of twenty-eight democrats from the seven towns represented, and one not located in any particular town; (6) that at the close of such convention a certificate in writing, duly signed, executed and verified by the presiding officer and secretary thereof, as required by sec. 31, Stats. 1898, and other provisions of law, was duly made and filed with the county clerk October 14, 1902; (7) that the republican county convention duly caused to be made and filed its certificate of nominations for county officers with the county clerk in the form and manner and time required by law; (8) that neither the prohibition party nor

any other party, except the republican party, called or held any caucuses in the county for 1902 for the election of delegates to a county convention for the nomination of candidates for the several county offices to be voted for at the general election in 1902; that the prohibition party therein did, pursuant to notice, nominate a full ticket for county officers, including member of assembly, to be voted for at that election, and filed its certificate of nominations as required by law; (9) that pursuant to such three certificates the county clerk caused to be made and published, as required by law, a notice of election and information to voters, having thereon for sheriff in the proper columns the names of the relator and the defendant and the prohibition candidate, together with a full list in the proper columns of all candidates of the three parties for county offices, including member of assembly; (10) that at the time and in the manner and form required by law the county clerk duly prepared the official ballot for the general November, 1902, election, having thereon in due form and in the proper columns the names of the candidates of the several parties so certified to him, including the several candidates for sheriff, and duly caused to be printed and distributed the sample ballots provided by law, and caused to be printed and furnished for use at said election said official ballots at the time and in the manner and form required by law; that in said notice of election and information to voters, sample ballots, and upon all of said official ballots for the office of sheriff, in the democratic column, was the name of the defendant, in the republican column the name of the relator, and in the prohibition column the name of its candidate; (11) that the relator and the public generally read such notices and knew all the facts stated for some two months prior to the election in November, 1902, and took part in the campaign, without making any claim that the nomination of the democratic or the prohibition party was irregular or unlawful, and took no action or proceeding in court or other-

wise, and made no protest to the county clerk or otherwise against placing the defendant's name in the democratic column upon the official ballot, nor against placing the name of the prohibition candidate thereon; (12) that at said election the relator received 717 votes for the office of sheriff, and the defendant received 835 votes for that office, and the prohibition candidate received thirty-one votes for that office—that is to say, the defendant had a majority of eighty-seven votes and a plurality of 118 votes; "that of said 835 votes so received (by defendant) for said office of sheriff less than 717 votes and less than a plurality was by writing in on the ticket by the voter the name of said" defendant; (13) that after such election, and at the time and in the manner required by law, such votes for sheriff were duly counted and canvassed as required by law without any protest from the relator or any one, and a certificate of election in due form as required by law was duly issued to the defendant for the office of sheriff, and he duly took the oath of office and gave the requisite bond and qualified as such sheriff, as required by law, and entered upon the discharge of his duties as such sheriff, and has since continued to do so; (15) that the votes cast for sheriff for the three candidates named were only thirty-nine less than all the votes cast for the four several candidates for governor at that election; (14) and only 368 less than the whole number of votes cast in that county for president in 1900; (16) that for many years the democratic vote in that county had been very small, as indicated, not being more than about one-fifth of the voters; (17) that the democratic mass convention so held was pursuant to the advice of the republican and democratic state central committees, to the effect that the right to hold such mass conventions had not been taken away by ch. 341, Laws of 1899; (19 and 20) that the defendant was and is a resident, citizen, freeholder, and voter in the county and was and is qualified to hold the office of sheriff, and that he was so nominated

without fraud and in the belief that the same was legal and according to law; (21) that the secretary of the democratic convention of August 30, 1902, mentioned, was the then. county clerk of the county.

And as conclusions of law, the court found, in effect, that the 835 votes cast for the defendant for the office of sheriff' were legally and lawfully cast, and legally and lawfully canvassed and counted for him for that office; that the defendant was lawfully chosen at the November election of 1902 for the office of sheriff for that county for the term beginning the first Monday of January, 1903, by plurality vote of 118; that the defendant was and is the duly elected, qualified, and acting sheriff of the county, and is duly authorized to perform the duties and enjoy the privileges of said office for the regular term beginning the first Monday in January, 1903; that the defendant is not guilty of usurping or intruding into or unlawfully holding or exercising said office of sheriff, and is entitled to judgment dismissing said complaint upon the merits and for his costs of this action—and ordered judgment accordingly.

From the judgment so entered upon such findings, the relator appeals.

For the appellant there was a brief by *Lamoreux & Park* and *William Sweet,* attorneys, and *Allan T. Pray,* of counsel,. and oral argument by *Mr. B. B. Park* and *Mr. Sweet.* They contended, *inter alia,* that ch. 341, Laws of 1899, is constitutional.  2 Brice, Am. Com. 47; *In re Duffy,* 4 Brewster, 531; *State ex rel. Doerflinger v. Hilmantel,* 21 Wis. 566; 10 Am. & Eng. Ency. of Law (2d ed.) 576, 586, 587; Cooley, Const. Lim. (3d ed.) *602; *State ex rel. Runge v. Anderson,* 100 Wis. 523; 32 Am. Law Reg. (N. S.) 104; *Todd v. Election Com'rs,* 104 Mich. 474, 480, 64 N. W. 496; *Ransom v. Black,* 54 N. J. Law, 446–451; *Talcott v. Philbrick,* 59 Conn. 472, 20 Atl. 436, 439; *People ex rel. Feeny v. Board of Canvassers,* 156 N. Y. 47–49; *People ex rel. Wells:*

*v. Common Council,* 46 N. Y. Supp. 701; *Leonard v. Comm. ex rel. Att'y Gen.* 112 Pa. St. 607, 622; *State ex rel. Att'y Gen. v. Dillon,* 32 Fla. 545; *Sanner v. Patton,* 155 Ill. 553, 562; *Bowers v. Smith,* 111 Mo. 45, 33 Am. St. Rep. 491; *De Walt v. Bartley,* 146 Pa. St. 529, 28 Am. St. Rep. 814; *State ex rel. Plimmer v. Poston,* 58 Ohio St. 620; *Common Council of Detroit v. Rush,* 82 Mich. 532–537, 46 N. W. 951; *State ex rel. Cothren v. Lean,* 9 Wis. 279; *State ex rel. Wood v. Baker,* 38 Wis. 71; *Dells v. Kennedy,* 49 Wis. 555; *State ex rel. Schuetz v. Luy,* 103 Wis. 524; *State ex rel. Blodgett v. Eagan,* 115 Wis. 417. Ch. 341, Laws of 1899 is mandatory. 10 Am. & Eng. Ency. of Law (2d ed.) 722; *State ex rel. Brooks v. Fransham,* 19 Mont. 273, 290; *Jones v. State ex rel. Wilson,* 153 Ind. 440, 55 N. E. 229, 233; *Hornung v. Board of Canvassers,* 119 Mich. 51, 77 N. W. 446; *Stackpole v. Hallahan,* 16 Mont. 40, 40 Pac. 80; *Schuler v. Hogan,* 168 Ill. 369, 48 N. E. 195; *Blackmer v. Hildreth,* 181 Mass. 29, 63 N. E. 14; *In re Madden,* 148 N. Y. 136, 42 N. E. 534; *People ex rel. Hirsch v. Wood,* 148 N. Y. 142, 42 N. E. 536; *Mauston v. McIntosh,* 58 Minn. 525, 60 N. W. 672; *Weddel v. Durbin,* 26 Wis. 390; *Halstead v. Rader,* 27 W. Va. 808; *State ex rel. Doerflinger v. Hilmantel,* 21 Wis. 566; *People ex rel. Nichols v. Board of Canvassers,* 129 N. Y. 395; *West v. Ross,* 53 Mo. 350; McCrary, Elections, §§ 700, 723 and 724; *German Am. Bank v. Devlin,* 96 Wis. 155, 157.

For the respondent there was a brief by *Goggins & Brazeau* and *Corrigan & Johnson,* and oral argument by *B. R. Goggins* and *W. D. Corrigan.* They contended, *inter alia,* that that part of sec. 1, ch. 341, Laws of 1899, material to the case, has no application to nominations made at a county convention held for the purpose of nominating candidates for county office. *State ex rel. Brooks v. Fransham,* 19 Mont. 273, 290; *Hankey v. Bowman,* 82 Minn. 328, 84 N. W. 1002, 1004; *State ex rel. Crawford v. Norris,* 37 Neb. 299,

55 N. W. 1086; *State ex rel. Bennett v. Barber,* 4 Wyo. 56,
96, 32 Pac. 14; *Owens v. State ex rel. Jennett,* 64 Tex. 500,
509; *Brown v. Williams,* 34 Neb. 376, 51 N. W. 851; *Bowers
v. Smith,* 111 Mo. 45, 57; *State ex rel. Att'y Gen. v. Dillon,*
32 Fla. 545, 547, 14 South. 383; *People ex rel. Feeny v.
Board of Canvassers,* 156 N. Y. 36, 52; *Bragdon v. Navarre,*
102 Mich. 259, 60 N. W. 277; *Miller v. Pennoyer,* 23 Oreg.
364, 31 Pac. 830. If that part of ch. 341, Laws of 1899, ma-
terial to the issues, should receive the construction contended
for by appellant it would be unconstitutional. *Stackpole v.
Hallahan,* 16 Mont. 40, 40 Pac. 80; *People ex rel. Hirsh v.
Wood,* 148 N. Y. 142; *In re Madden,* 148 N. Y. 136; *State
ex rel. Wood v. Baker,* 38 Wis. 71, 86, 87; *State ex rel.
Runge v. Anderson,* 100 Wis. 523, 530; *State ex rel. Briesen
v. Barden,* 77 Wis. 601; *Dells v. Kennedy,* 49 Wis. 555;
*Bowers v. Smith,* 111 Mo. 45, 20 S. W. 101; *Moyer v. Van
de Vanter,* 12 Wash. 377, 29 L. R. A. 670; *State ex rel.
Brooks v. Fransham,* 19 Mont. 273, 289, 290; *Spier v. Baker,*
120 Cal. 370, 375, 52 Pac. 659; *State ex rel. Van Ryn v.
Horan,* 85 Wis. 94; *State ex rel. Att'y Gen. v. Cunningham,*
81 Wis. 440, 476; *Britton v. Board of Comm'rs,* 129 Cal.
337, 342–344; *Murphy v. Curry,* 137 Cal. 479; *De Walt
v. Bartley,* 146 Pa. St. 529, 540; *Hornung v. Board of
Canvassers,* 119 Mich. 51, 77 N. W. 446; *Schuler v. Hogan,*
168 Ill. 369, 48 N. E. 195; *Baker v. Scott,* 4 Idaho, 596,
43 Pac. 76–78; *Miller v. Pennoyer,* 23 Oreg. 364, 31
Pac. 830, 831; *State ex rel. Crawford v. Norris,* 37 Neb.
299, 55 N. W. 1086; *State ex rel. La Valle v. Sauk Co.*
62 Wis. 376; *Milwaukee Co. v. Isenring,* 109 Wis. 9, 28;
*State ex rel. Att'y Gen. v. Boyd,* 19 Nev. 43, 5 Pac. 735;
*Wagner v. Milwaukee Co.* 112 Wis. 601; *Gilbert-Arnold L.
Co. v. Superior,* 91 Wis. 353, 357; *State ex rel. Chase v.
Rogers,* 10 Nev. 250; *Smith v. Sherry,* 54 Wis. 114; *Vinsant
v. Knox,* 27 Ark. 266; *Powell v. Jackson,* 51 Mich. 129.
Where an opportunity is given to the candidate to have the

ballot properly made up before election, and he is in possession of all the facts and chooses to wait until after election
and when defeated at the polls seeks to avoid the choice of
the, voters as expressed at the election, his action comes too
late and he is estopped and cannot be heard to complain.
*State ex rel. Crawford v. Norris,* 37 Neb. 299, 312, 55 N. W.
1086; *State ex rel. Brooks v. Fransham,* 19 Mont. 273, 288,
289; *Reg. ex rel. Harris v. Bradburn,* 6 Ont. Pr. Rep. 308.
See also many cases cited in note in *Bowers v. Smith,* 16
L. R. A. 755; *State ex rel. Bennett v. Barber,* 4 Wyo. 56, 97,
32 Pac. 14; *Tutt v. Hawkins,* 53 Neb. 367, 73 N. W. 692;
*Allen v. Glynn,* 17 Colo. 338, 15 L. R. A. 743; McCrary,
Elections, p. 512, § 705; *State ex rel. Wood v. Baker,* 38
Wis. 71; *Baker v. Scott,* 4 Idaho, 596, 43 Pac. 76–78; *Bowers v. Smith,* 111 Mo. 45, 56; High, Extra. Leg. Rem. § 646
and notes.

CASSODAY, C. J.   It is urged on the part of the relator that
the democratic mass convention which nominated the defendant as its candidate for sheriff was an unlawful gathering,
held in violation of ch. 341, Laws of 1899; that, being unlawful, there was, in fact and law, no nomination made by
that convention, and consequently that the ballots cast for the
defendant were improperly canvassed and should be disregarded.   Omitting what is not here applicable, the particular
provisions of the act relied upon declare that:

"Caucuses and meetings of political parties held for the
purpose of nominating candidates or choosing delegates to
assemble in convention to nominate any person for any public
office, to be voted for at any general . . . election . . .
and all meetings for nominating candidates or choosing delegates to conventions to nominate candidates to be voted for
at such elections, *commonly called caucuses* unless held under
the provisions of this act, are hereby declared to be *unlawful,*
and no political party shall have its political ticket *placed
upon the official ballot, or canvassed* at such election, unless

the nomination of its candidates are made in accordance with the provisions of this act."

It is claimed that these provisions are mandatory and constitutional, and that they were improperly disregarded by the trial court.

Counsel for the defendant make two answers to such contention. One is to the effect that if the act must be construed as claimed on the part of the relator, then that it is repugnant to the constitutional right secured to every "qualified elector" to vote "by ballot" for sheriff and other county officers, and by implication prohibits the legislature from "excluding from the right of suffrage" any "qualified elector" except for crime. Secs. 1, 3, 6, art. III, Const., and sec. 4, art. VI, Const. The other answer is to the effect that the whole act, when fairly considered, only relates to the election of delegates and caucus conventions, and has no reference to mass conventions, such as nominated the defendant, and that this is especially so when considered in the light of other legislation on the subject.

Such legislation seems to have commenced in 1893. In that year the legislature passed an act entitled "An act to regulate caucuses and conventions," applicable, however, only to Milwaukee county. Ch. 249, Laws of 1893. A few days afterwards the same legislature passed an act entitled "An act to consolidate and revise the statutes of the state, relating to general elections, the conduct, canvass and returns of the same, and to secure the secrecy and purity of the ballot, and for other purposes." Most of that act is still in force, as will be found by reference to secs. 12–94$j$, Stats. 1898. Ch. 288, Laws of 1893. Two years afterwards another act was passed entitled "An act to regulate the nomination of candidates," applicable, however, only to Milwaukee county. Two years afterwards another act was passed entitled "An act to regulate the nomination of candidates," and relating to "caucuses and meetings of political parties  .  .  .   commonly called

caucuses." Ch. 312, Laws of 1897. That appears to have been the first act regulating such caucuses and political meetings outside of Milwaukee county. That act was continued, in a modified form, as secs. 11a to 11i of chapter 5 of the Statutes of 1898. The title of that chapter had previously been, "Of Electors and General Elections," but by reason of the new act relating to such "caucuses" the title was changed in the revision of 1898 so as to read, "Of *Caucuses,* Electors and General Elections."

Such were the general circumstances under which ch. 341, Laws of 1899, was enacted. The significance of that act is expressed in its title, which is, *"An act relating to caucuses,* and amending sec. 11a to sec. 11i, inclusive, of chapter 5 of the Statutes of 1898." As appears from the above quotation from the first section of the act, it deals with "caucuses and meetings of political parties . . . commonly called caucuses." It defines caucuses, and prescribes the manner of calling them and the length of time they shall be held open. Sec. 1. Every political party desiring to nominate candidates as therein provided is required to do so in the manner therein prescribed. Sec. 2, Id. It requires the respective committees to determine when and where the conventions of the political party it represents shall be held, and also the day upon which the caucuses of such political party shall be held. Sec. 2, Id. Every section of the act pertains to caucuses. At all caucuses held under the provisions of the act all votes are to be by ballot. The duties of caucus officers and the canvass of votes cast at caucuses, and the manner of certifying the result, are prescribed, and punishment for bribery and failures of duty is provided. The act only provides for the amendment of the provisions of the statutes relating to caucuses. Ch. 341, Laws of 1899, made no reference to sec. 30, Stats. of 1898, which provides that "candidates to be voted for" at general elections "may be nominated . . . by a convention or primary meeting held for the purpose,

consisting of an organized assemblage of electors," and so it makes no reference to sec. 31, Stats. 1898, which provides for certifying the result of "nominations made by a convention;" nor does it make any reference to sec. 40, Stats. 1898, prescribing the form of official ballots, nor sec. 41, providing for the preparation of official ballots and the voting and the counting of the same. True, the twelfth section of ch. 341, Laws of 1899, expressly repeals the nine sections of the Statutes of 1898 relating to caucuses, thereby amended, and also repeals all acts and parts of acts in conflict with the provisions of that act; and it is claimed that secs. 30 and 31, and 40 and 41, Stats. of 1898, mentioned, are to a certain extent in conflict with the first section of that chapter, wherein it declares that "no political party shall have its political ticket placed upon the official ballot or canvassed at such election, unless the nomination of its candidates are made in accordance with the provisions of this [that] act." If the act is confined to "all meetings for nominating candidates or choosing delegates to conventions to nominate candidates to be voted for at such elections, *commonly called caucuses,*" then there is no such conflict. On the other hand, if it is to have the broad and sweeping construction contended for by counsel for the relator, and does include such mass conventions as nominated the defendant, then there is much force in the contention.

But there are other reasons why the act should not have such broad construction. The next day after the governor approved ch. 341, Laws of 1899, he approved another act, entitled "An act relating to the form of official ballots for general elections, and amending secs. 37, 38, 40, 51, 52 and subds. 1 and 3, sec. 57, Stats. 1898," being ch. 349, Laws of 1899. If secs. 30, 31, and 41, Stats. 1898, mentioned, are to be regarded as amended by implication, as claimed by counsel for the relator, then it is singular that no reference was therein made to either of those sections in a chapter ex-

pressly amending six other sections of the Statutes of 1898 upon the same subject. If the contention of counsel for the relator is correct, it is still more singular that on the next day after the governor approved ch. 341, Laws of 1899, he approved another act [ch. 351, sec. 2], wherein sec. 30, Stats. 1898, was expressly amended by changing the word "two" in the latter part of the section to "one" leaving the section to continue to declare, as before, that:

"Candidates to be voted for at the elections to which this title applies may be nominated. . . . by a convention or primary meeting held for the purpose, consisting of an organized assemblage of electors."

Two years after that enactment, the legislature passed an act entitled "An act to amend sections 36, 37, 38 and 40 of the Statutes of 1898, as amended by chapter 349 of the Laws of 1899, relating to the form of official ballots for general elections," being ch. 457, Laws of 1901; and yet no reference was made therein to secs. 30, 31, or 41 of the Statutes of 1898. Besides, in construing a statute, regard is to be had to its purpose and object.

One of the objects of such caucus statutes manifestly was to secure to every political party having one per cent. of the entire vote cast in the county a place on the official ballot for the election of county officers. The statute goes further, and "in case of a division in any political party, and a claim by two or more factions thereof to the same party name," makes provision for securing a place on the official ballot by each of such factions. Sec. 35, Stats. 1898. In the case at bar there was no such division of the democratic party in Adams county. Nor was there any controversy as to the official ballot. That ballot was prepared by the county clerk in the form and in the manner prescribed by law. The name of the relator was upon it as the republican candidate for sheriff, and the name of the defendant was upon it as the democratic candidate for sheriff. All parties and all electors, appar-

ently, were satisfied with the official ballot as thus prepared and presented for use at the election. The defendant received not only a plurality of 118 votes, but also a majority of eighty-seven of all votes cast for sheriff. Upon the facts found, we must hold that mass conventions provided for by sec. 30, Stats. 1898, were not abolished by ch. 341, Laws of 1899, and that the name of the defendant was properly on the official ballot as the candidate of the democratic party for the office of sheriff, and he was duly elected and qualified as such sheriff.

This makes it unnecessary to consider whether ch. 341, Laws of 1899, would have been constitutional if construed as contended for on the part of the relator.

*By the Court.*—The judgment of the circuit court is affirmed.

MARSHALL, J. I concur in the affirmance of the judgment appealed from, but dissent from the reasons given in the opinion of the court. To my mind it seems plain that in ch. 5, Stats. 1898, was a complete scheme for the nomination of party candidates so as to entitle them to have their names placed on the official ballot, and for the preparation of official ballot forms and the use thereof by the electors. Sec. 30, though not using the name "caucus," used what was understood to be an equivalent thereto and what was intended to include all methods of nominating party candidates that should be deemed lawful. Ch. 341, Laws of 1899, deals with the same subject. It contains a complete scheme in respect thereto as regards the nomination of party candidates, and repealed all acts and parts of acts in conflict therewith except as regards counties having a population of 200,000 or more, and contained this unmistakable language as to whether it was exclusive or not:

"No political party shall have its political ticket placed upon the official ballot, or canvassed at such election, unless

the nominations of its candidates are made in accordance with the provisions of this act."

By ch. 349, Laws of 1899, a companion law, ch. 5 of the statutes, aforesaid, in respect to the official ballot, was amended, revised, and re-enacted. By what authority can the court change the prohibition referred to, made, as it is, in language as plain as English words can express it, by reading out of sec. 30, Stats. 1898, a method for making party nominations not found in the act of 1899, and add it to the prohibitory clause thereof? I know of none. If the court may thus enter, as it seems it does, the domain of legislation, and make a good law out of a bad one, then the declaration often found in our books, on the subject of the function of the court being confined to a declaration of the law and the enforcement thereof, not the making of the same, should be materially modified. I confess that this method of treating the subject is not legitimate if the law of 1899 is open to construction. My brethren assume that it is. I am entirely unable to look at it that way. They refer to the approval by the governor of ch. 349, Laws of 1899, the day after his approval of ch. 341 aforesaid, as evidence that it was not intended by the latter to change that feature of sec. 30 of the statutes, upon which reliance is placed by appellant. But it is easily seen, as before indicated, that the two acts were companions. One related to the method of making party nominations in order to entitle the nominees to have their names placed upon the official ballot; and the other revised, amended and re-enacted the existing law on the subject of such ballot. Both together merely cover those two subjects in a different form than they were covered by ch. 5 of the statutes. The obvious reason why sec. 30 was not otherwise referred to than by the prohibitory and general repealing clauses, is because it also covered the subject of individual nominations, which was not disturbed by the new law.

Reference is made to the fact that the day after the ap-

proval of ch. 341, ch. 351, Laws of 1899, was also approved,. wherein sec. 30 was amended by changing the word "two" to the word "one," no other reference to said section being made. I hardly think my brethren would have given any significance to that circumstance had they observed, as the fact is, that ch. 351 was an act prepared by the revisors and introduced early in the session of 1901 for the purpose of correcting errors in the published statutes, and that the change referred to was not in that part of sec. 30 material to this case, but in the last part thereof, which relates to the subject of evidence as to whether a party, seeking to have the names of its nominees placed upon the official ballot for any election, polled one per cent. of the entire vote cast at the previous election.

It is said that the obvious purpose of ch. 349, Id., was to secure to every political party casting one per cent. of the votes at any election the right to be represented upon the official ballot at the succeeding election by complying with the law in respect to making nominations, indicating that it was not the legislative purpose to change that part of sec. 30 under discussion. Why so? we may well inquire. My brethren do not seem to say why. I see no reason why such purpose is significant at all, since the same feature was fully covered by ch. 5 of the statutes. Nothing in that regard was added to existing laws by the new act. A new method of securing such purpose was provided for. That is all. I cannot understand how any significance whatever can be legitimately attributed thereto.

Again it is said that by ch. 457, Laws of 1901, the legislature acted on the subject of the form of the official ballot, without referring to sec. 30 of the statutes, and that such circumstance is significant. Why so? The subject of the law of 1901 did not relate to the manner of making party nominations at all. It was confined to the form of the official ballot. It was amendatory of ch. 349, Laws of 1899, as the

latter law was of ch. 5 of the statutes on the same subject. Neither had anything whatever to do with the necessary way of making party nominations.

The act of 1899, as above indicated, provided how party nominations should be made, expressly declaring that if made in any other way they should be deemed unlawful and the ticket should not rightfully have a place on the official ballot; and that if wrongfully placed thereon it should not be canvassed. That act should be taken as the legislature made it, since it is so plain as not to be open to construction under the rules covering that subject. The responsibility therefor,. if it is unreasonable or violates constitutional limitations,. should rest where it belongs. One feature which is vital to this case, in my view of it, is that by which the legislature attempted to so provide that the votes of electors, though honestly cast in the manner provided by law, without any notice to them of any infirmity in the execution thereof, should be rejected as void in case of their being for party nominees whose names appeared in due form on the official ballot, if for some want of compliance with the statutory requisites in that regard they were not entitled to be there, notwithstanding the fact of the ballot being placed before the voter by state agencies as being in all respects in conformity with law. The voters, in the instance before us, were compelled to make their ballots by using the form provided for them, and to treat such form, in expressing their will, in the precise manner therein indicated. Having done so, I think, barring fraud participated in by such voters, all questions as to the right of the party voted for to have his name upon the ballot are foreclosed. They cannot, after the votes are cast, be inquired into for the purpose of nullifying the voters' will. So far as the law in terms declares otherwise, it is a palpable violation of the constitutional right of every voter to cast his vote for whomsoever he sees fit, and to have it counted. The decisions elsewhere to that effect, so far as they go, in my judg-

ment, are sound beyond reasonable controversy, *Tutt v. Hawkins,* 53 Neb. 367; 73 N. W. 692; *Bowers v. Smith,* 111 Mo. 56, 20 S. W. 101; *Baker v. Scott,* 4 Idaho, 596, 43 Pac. 76.

The spirit of the above decisions, which I heartily indorse, is well stated in McCrary on Elections, § 706, cited by appellant, thus:

"These decisions proceed upon the principle that, in the absence of fraud, the voter who has had nothing to do with the preparation of the ballot, nor with matters preliminary to the election, should not be deprived of the right to have his vote counted because of the errors or wrongful acts of election officers."

The adjudications thus far on the subject, though going in the main upon rules of construction or the doctrine of estoppel, as to contesting candidates for the office, might well be put upon the higher ground that the constitutional right of the elector to participate with effect in elections, so far as having his choice of candidates regarded, is so far removed from legislative interference that he cannot rightfully be required, by any legislative act, to use a particular form in a particular way for indicating his choice, and thereafter have that choice disregarded because, perchance, of its being in favor of one whose name was not rightfully on the ballot form placed in his hands as correct; the wrong of the matter being wholly chargeable to public agencies. The feature of the act of 1899 attempting to do that, and upon which appellant relies, should be condemned as not law, though it is such in form. The right of suffrage is not a creature of the legislature, nor subject to its interference except by reasonable regulations to secure its safe, honest, intelligent, independent, unbiased exercise. Some regulations are necessary to the effectiveness of the constitutional guaranty, and of course are legitimate. However, attempts, under the guise of regulating the exercise of the elective franchise, which go beyond

that field and materially embarrass the enjoyment of the right or destroy it, are not legitimate. They are not permitted by the constitution to be effective and will receive prompt condemnation by the court if it efficiently performs its functions as guardian of constitutional guaranties. *State ex rel. Runge v. Anderson,* 100 Wis. 523, 76 N. W. 482. That principle was most vigorously declared by this court in *State ex rel. Wood v. Baker,* 38 Wis. 71. Nothing need ever be added to it. To prevent effective legislative encroachment upon the constitutional right of the elector, we need but to firmly apply it. The court, by RYAN, C. J., in that case, said, in part:

"The constitution vests every person having certain qualifications at the time of any elections with the right of suffrage at such election. . . . Every one having the constitutional qualifications then, may go to the polls, vested with the franchise, of which no statutory condition precedent can deprive him. . . . Statutes cannot impair the right, though they may regulate its exercise. Every statute regulating it must be consistent with the constitutionally qualified voter's right of suffrage when he claims his right at an election;" the theory thereof being "to guard against the abuse of the elective franchise, and to preserve the purity of elections."

Speaking with regard to the effect of failure of public officers to properly execute the registry law prior to the election, upon the voter's right, he said, substantially: If he were by the act made responsible for its execution so as to lose his right by nonfeasance or misfeasance of the public officers, of which he had no notice, it might be impossible to sustain it. Such nonfeasance or misfeasance could have no effect to impair a personal, vested, constitutional right.

Applying the foregoing to the facts of this case, the votes cast for respondent were properly counted, regardless of the prohibition in the law of 1899 to the contrary. They were the result of the exercise of the elective franchise in the only manner permitted by law. The ballot form used was in effect

.guaranteed by the state to be correct. That was assented to, likewise, by the relator, till his objections thereto could not be made effective without defeating the will of the voters. That cannot rightfully be done.

