THE STATE EX REL. PRAY and another, Respondent, vs. YANKEE, County Clerk, Appellant.

*October 16—November 7, 1906.*

*Primary elections: Ballots: Written names.*

Under the primary election law (ch. 451, Laws of 1903) the voters of a party may write in upon the primary election ballot the name of any person as their choice for the party nominee for any office, and such votes shall be counted; and the person receiving the greatest number of votes for the party nomination for an office at such primary election shall have his name placed on the ballot for the general election as the nominee of that party.

APPEAL from a judgment of the circuit court for Ashland county: CHESTER A. FOWLER, Judge.    *Affirmed.*

Upon the verified petition of the relators an alternative writ of *mandamus* was issued by the circuit court for Ashland county, September 25, 1906, commanding the defendant, as clerk of that county, to place upon the official ballot to be used at the general election to be held in that county November 6,

1906, as the candidate of the Democratic party for the office of district attorney in that county the name of the relator *Allan T. Pray,* and as the candidate of the Democratic party for the office of county treasurer of said county the name of the relator *George W. Dopp,* or show cause to the contrary before said court October 1, 1906, and make due return to the writ. The defendant having made return to the writ, and a motion to quash the alternative writ of *mandamus* having been denied, and a demurrer to the petition and alternative writ on the ground that the same stated no facts sufficient to constitute a cause of action having been overruled, the trial court, on the undisputed and admitted facts, on October 4, 1906, adjudged, in effect, that a peremptory writ of *mandamus* be and the same was thereby awarded to the relators against the defendant, commanding him to place the names of the said relators upon the said official ballot; that is to say, the name of the said *Allan T. Pray* as the candidate of the Democratic party for the office of district attorney of said county, and the name of *George W. Dopp* as the candidate of the Democratic party for the office of county treasurer of said county, and for costs. From such judgment entered therein and the whole thereof the defendant appeals.

For the appellant there was a brief signed by *M. E. Dillon,* attorney, and *W. M. Tomkins,* of counsel, and oral argument by *F. T. Tucker.*

For the respondent there was a brief by *Sanborn, Lamoreux & Pray,* and oral argument by *A. T. Pray.*

CASSODAY, C. J. The facts are undisputed. The relators were both Democrats, but no Democratic candidate had been nominated for the office of district attorney of Ashland county prior to the primary election held September 4, 1906, and no Democratic candidate had been nominated for the office of county treasurer of that county prior to that date. Neither of the relators had, at the time of said election, filed

nomination papers entitling him to have his name printed on any official ballot used at the primary election, and neither of their names was printed on any official ballot at the time of such election. There were printed on the official primary ballot of the Democratic party used at such election the names of candidates for the several state offices and for representative in Congress and member of assembly, but no name was printed on said ballot for any county office, except for the offices of sheriff and register of deeds. There was printed, however, on the official primary ballot of the Republican party, used at such election, the names of two or more candidates for the respective offices of county treasurer and district attorney. On September 13, 1906, the county board of canvassers, consisting of the county clerk, the defendant in this action, and two supervisors, one of whom was a Republican and the other a Democrat, certified "that the foregoing and *within tabular statement is correct and true,* as compiled from the original returns made to the county clerk of said county and as compared therewith by us."

It appears from such "tabular statement," on the back of such certificate and forming a part thereof, that forty-six votes were cast for the office of county treasurer, but twenty-seven of them were rejected by said board for the only reason suggested that they were cast for persons whose names, respectively, had not been *printed* on the "official primary ballot of the Democratic party," but had been written in thereon by the respective persons casting such votes; that among the twenty-seven votes so rejected were twenty-two, each having the name of *Mr. Dopp* written in thereon as the Democratic candidate for county treasurer. The other nineteen names so written in on such primary Democratic ballot were cast for two different persons, one receiving eleven votes and the other eight votes, and were counted by the board as "given for county treasurer on the Democratic ticket," because, as claimed, each of such two persons had filed nomination papers as candidates for county treasurer on some other

official primary ballot than that of the Democratic party, and their respective names were printed on such other primary ballot. Thus, it appears that *Mr. Dopp* had a large plurality of the votes for county treasurer appearing on the primary Democratic ballot in writing.

So it appears from such "tabular statement" that forty-five votes were cast for the office of district attorney, but thirty-two of them were rejected by the board for the only reason suggested that they were cast for persons whose names, respectively, had not been *printed* on the "official primary ballot of the Democratic party," but had been written in thereon by the respective persons casting such votes; that among the thirty-two votes so rejected were twenty-six, each having the name of *Allan T..Pray* written in thereon as the Democratic candidate for district attorney. The other thirteen names so written in on such primary Democratic ballot were cast for three different persons, and were counted by the board as "given for district attorney on the Democratic ticket," because, as claimed, each of such three persons had filed nomination papers as a candidate for district attorney on some other official primary ballot than that of the Democratic party, and their respective names were printed on such other primary ballot.

The question recurs whether, upon the facts thus certified to be "correct and true" by the "board of county canvassers," the relators are entitled to have their names placed upon the official ballot to be used at the general election to be held in the county of Ashland November 6, 1906, as candidates of the Democratic party for the offices, respectively, of district attorney and county treasurer of that county. Did the fact that neither of them filed nomination papers entitling them to have their names printed on the official primary election ballot preclude voters from voting for them at the primary election September 4, 1906? Where, as here, a voter receives his package of primary ballots and selects the one which purports to be his own party ticket, but, upon inspection, finds

that for one office there is no printed name upon the ballot, does the primary act preclude him from voting for some person in his own party? Subd. 3, sec. 12, ch. 451, Laws of 1903. Or, is he precluded from voting at all unless he votes for some person whose name is printed on the primary ballot of some other party which he is trying to beat? Id. In other words, is it the purpose of the primary election law to secure to each voter the right of free choice in the selection of candidates, or is it the purpose to build up or tear down political parties?

The act declares that the provisions of the statutes previously in force in relation to holding and conducting elections, counting the ballots and making returns thereof, and all other kindred subjects, should apply to all primaries in so far as they were consistent with the act. Secs. 12, 16, 20, 25, ch. 451, Laws of 1903. That required the board of county canvassers to make, as they did, a succinct tabular statement of the votes cast at such primary election for each office voted for, whether canvassed or not, and to certify such statement to be correct. Secs. 83, 84, Stats. 1898. It is true the act only provides for the printing upon the official ballot to be used at such primary election the names of all candidates for the respective offices for whom nomination papers had been duly filed. Sec. 9, ch. 451, Laws of 1903. The same section declares that such official ballot shall be printed "in the form provided herein and annexed hereto." The form of ballot so prescribed, after giving direction as to the manner of voting "for a person whose name *is printed* on the ballot," declares that, "to vote for a person whose name is *not printed* on the ballot, *write or paste* his name in blank space provided for that purpose." This is substantially the same as prescribed by the statute in the case of general elections, which, as we have seen, is made applicable to the primary election, wherein it is declared:

"But any voter may write upon his ballot the name of any person for whom he desires to vote for any office, in such

place or so designated as to indicate the office, and such vote shall be counted the same as if printed upon the ballot and marked by the voter." Sec. 41, Stats. 1898.

In obedience to such requirements, twenty-two of the voters of Ashland county wrote in on the Democratic ticket the name of *Mr. Dopp* for the office of county treasurer, giving him double the number of votes of any other person whose name was so written in on that ticket for that office. And so, in obedience to the same requirements, twenty-six of the voters of that county wrote in on the Democratic ticket the name of *Allan T. Pray* for the office of district attorney, giving him a majority of all the votes so written in on that ticket for that office.

Another section of the act declares:

"If any elector write upon his ticket the name of any person who is a candidate for the same office upon some other ticket than that upon which his name is so written, this ballot shall be counted for such person only as a candidate of the party upon whose ticket the name is written, and shall in no case be counted for such person as a candidate upon any other ticket." Subd. 3, sec. 12, ch. 451, Laws of 1903.

It is then provided therein that, in case the same person is nominated upon more than one ticket, he shall designate upon which his name shall be printed on the official ballot. Id.

Another provision of the act in question declares:

"The person receiving the greatest number of votes at a primary as the candidate of a party for an office shall be the candidate of that party for such office, and his name as such candidate shall be placed on the official ballot at the following election." Subd. 1, sec. 18, ch. 451, Laws of 1903.

This provision certainly means what it says; and so the words, "the greatest number of votes at a primary," necessarily include the votes for persons whose names are not printed on any ballot but are written in on the primary ballot of his party, as well as those that are written in and also printed on the ballot of some other party. And this seems to be in harmony with the purpose of the act, as indicated in

its title, which is "An act to provide for party nominations *by direct vote.*" The trial court properly held, in effect, that it appears upon the face of the act that voters of a party have the right to write in upon the primary election ballot the name of their choice as the party candidate for any office, and that such vote should be counted; and that the person receiving the greatest number of votes for an office at such primary election should be the candidate of his party and have his name put on the ballot for the general election.

*By the Court.*—The judgment of the circuit court is affirmed.