STATE EX REL. DITHMAR, Appellant, vs. BUNNELL, Respondent.

*November 13, 1906—April 9, 1907.*

*Elections: Nomination papers: Alterations: Votes for person not legally nominated: Bribery: County judges: Filing oath of office: Recording bond: Delay: Vacancies: Appointment: Continuance in office by legislative act: Taking forcible possession of office.*

1. Under subd. 3, sec. 30, Stats. (1898), providing that each voter signing a nomination paper shall add to his signature his business and residence, the use of ditto marks (") placed under the business or residence of some former signer is permissible.

2. At an election to fill the office of county judge for an unexpired term and also for a new term thereafter, separate nomination papers for each term were necessary; and after a nomination paper specifying merely the office of "county judge" had been signed the candidate had no right to change it by interlining the words "for the unexpired term."

3. After the name of a candidate has been placed upon the official ballot and the election has taken place, the fact that there had been a wrongful alteration in his nomination papers does not of itself require the rejection of the votes cast for him at the election.

4. It is bribery, under sec. 4478, Stats. (1898), for a candidate for the office of county judge to promise the voters, before the election, that if elected he "will draw all papers necessary in the settlement of estates and give the necessary advice free of charge." But such a promise, in the absence of any proof that any voter was induced thereby to vote for such candidate, is not sufficient ground for rejecting the votes cast for him or ousting him from the office.

5. Where the person elected to the office of county judge filed his oath of office with the county clerk, his failure to file it in the

State ex rel. Dithmar v. Bunnell, 131 Wis. 198.

office of the clerk of the circuit court as required by sec. 2442, Stats. (1898), did not cause the office of county judge to become vacant, said statute being directory, in the absence of any provision expressly declaring a vacancy in case of such failure.

6. The office of county judge did not become vacant merely because the person elected thereto failed, until three months after executing and filing his official bond, to have such bond recorded, as prescribed in sec. 702, Stats. (Supp. 1906; ch. 376, Laws of 1903).

7. The continuance of a person in office by legislative interference, beyond the specific term for which he was elected or appointed, is equivalent to a new appointment to the office, and void if the office be one that the legislature cannot fill by direct appointment or election.

8. Relator was appointed on December 10, 1904, to fill a vacancy caused by death in the office of county judge. On April 4, 1905, defendant was elected for the unexpired term of the deceased judge, ending January 1, 1906. He duly qualified. Under the statutes then in force relator would hold the office until June 5, 1905, and on that day defendant would be entitled to it. On April 21, 1905, ch. 91, Laws of 1905, took effect, providing that "all county judges heretofore appointed to fill vacancies shall hold and continue in office until the first Monday in January, 1906." *Held*, that it was not competent for the legislature thus to nullify the election and continue the relator in office.

9. Upon being refused possession of the office of county judge, the person entitled thereto was justified in forcibly breaking into the office room in the courthouse and taking possession thereof in the absence of the person who claimed such office and had excluded him.

APPEAL from a judgment of the circuit court for Juneau county: J. J. FRUIT, Circuit Judge. *Affirmed.*

For the appellant there was a brief by *Barney & Price* and *Veeder & Veeder,* attorneys, and *J. T. Dithmar, in pro. per.,* and oral argument by *Mr. H. W. Barney* and *Mr. Dithmar.*

*Daniel H. Grady,* for the respondent.

The following opinion was filed January 8, 1907:

CASSODAY, C. J.   It appears from the record and is undisputed that December 10, 1904, the governor appointed the relator county judge of Juneau county to fill the vacancy created

State ex rel. Dithmar v. Bunnell, 131 Wis. 198.

by the death of W. G. Beebe, who had been elected to that office at the regular election in April, 1901. On December 17, 1904, the relator duly qualified as such county judge. The election to fill that office took place April 4, 1905, and at that time there were six candidates for the office, including the relator and the defendant. The votes cast at such election were canvassed by the board, and on April 13, 1905, the result was declared by the board to the effect that for the unexpired term of said office 2,546 votes were cast, of which the defendant received 800, John Price, Jr., 673, and the relator 626, and the balance were scattered among the three other candidates, and that for the full term of said office 3,183 votes were cast, of which the defendant received 926, John Price, Jr., 762, and the relator 669, and the balance were scattered among the three other candidates; and so the county clerk of Juneau county on April 13, 1905, issued to the defendant a certificate of election for said unexpired term and also a certificate of election for the full term of said office. Thereupon and on the same day the defendant took and subscribed the requisite oath and executed the requisite official bond for said unexpired term and filed and deposited the same with the county clerk, and subsequently and on July 17, 1905, recorded said official bond in the register's office of that county. On April 14, 1905, the defendant took and subscribed the requisite oath and executed the requisite official bond for said full term and filed and deposited the same with the county clerk, and subsequently and on July 17, 1905, recorded said official bond in the register's office in that county. On June 5, 1905, the defendant appeared at said office and demanded of the relator the possession thereof, but the same was refused by the relator. On June 7, 1905, the defendant again appeared at said office and demanded of the relator the possession thereof, but the same was again refused by the relator. On July 28, 1905, and while the relator was absent from the state, the defendant broke and entered said office room, put a new lock

upon the door thereof and retained the key to the same, and has ever since held the possession of said office and acted as county judge of said county.

On September 5, 1905, the relator commenced this action of *quo warranto* to determine the right to said office of county judge. The defendant answered the amended complaint. At the close of the trial, the jury impaneled and sworn in the cause, by the direction of the court, found that the defendant had not usurped, intruded into, or wrongfully taken possession of the office of county judge of Juneau county, but that he was then, and was on the date of taking possession thereof, entitled to said office as the duly elected and qualified county judge of said Juneau county, and that *Julius T. Dithmar,* the relator herein, had no cause of action. From the judgment entered in pursuance of such verdict in favor of the defendant and against the relator, with costs, the relator appeals.

1. Under the Statutes of 1898 county judges were to be elected on the first Tuesday of April, 1901, and every fourth year thereafter; and the term of such office was to be four years and commence on the first Monday of January next after such general election. Sec. 2441, Stats. (1898). The same section provided that, when a vacancy should occur in the office of county judge from any cause, the governor should "appoint a county judge, and the person so appointed" should "hold for the residue or for the whole of the term." Id. That section was amended in 1899 by striking out the words "for the residue or for the whole of the term," and inserting in lieu thereof the words "until the first Monday of June next succeeding such appointment." Sec. 2, ch. 7, Laws of 1899. Four years afterwards a statute was enacted, which, as applied to this case, declared that "in all cases of vacancy in the office of . . . county judge, the election to fill such vacancy shall be held on the first Tuesday of April next after the vacancy shall happen." Sec. 4, ch. 10, Laws of 1903. Such were the provisions of the statutes applicable when the

relator was appointed to fill the vacancy created by the death of Judge Beebe in December, 1904, and also when the election was held to fill that office April 4, 1905. Judge Beebe was elected for the full term of four years in April, 1901, and of course, had he continued to live, his term would not have expired until in January, 1906. Under the amendments to the statutes cited it is obvious that the relator, by virtue of his appointment, had the right to hold the office "until the first Monday of June next succeeding such appointment," which was June 5, 1905. And so, under the statutes in force at the time of the election April 4, 1905, some one was to be elected to fill the office for Mr. Beebe's unexpired term; that is to say, from June 5, 1905, to January 1, 1906, and also some one for the full term commencing January 1, 1906. But, as urged by counsel, since the relator was duly appointed, qualified, and in possession of the *de jure* office, he was entitled to hold the same until his successor had been elected or appointed and qualified. Sec. 964, Stats. (1898); sec. 14, art. VII, Const.; *State ex rel. Finch v. Washburn,* 17 Wis. 658; Mechem, Pub. Off. § 397.

2. Counsel contend that the defendant was never nominated for the office. One of the grounds for this contention is that most of the electors who signed the defendant's nomination papers failed to state their residence or business, other than to add ditto marks below the business or residence of some former subscriber, as, for instance, below the words "Farmer," "Plymouth," "Lemonweir," etc. The statute required that each voter should "add to his signature his business and residence, street and number, if any." Subd. 3, sec. 30, Stats. (1898). It seems to be settled that courts will take judicial notice of abbreviations in common use and also the ordinary contractions or abbreviations of Christian names. 17 Am. & Eng. Ency. of Law (2d ed.) 897; 1 Am. & Eng. Ency. of Law (2d ed.) 97-102, citing numerous cases. Thus, it has been held in Indiana: .

"The use of a double comma following the name of a subscriber to such articles of association under the name of a certain specified locality sufficiently designates such subscriber's residence." *Steinmetz v. V. & O. T. Co.* 57 Ind. 457. See, also, *Henry v. Armitage,* L. R. 12 Q. B. Div. 257.

Our statutes expressly provide that, in legal proceedings, "such abbreviations as are now commonly used in the English language may be used, and numbers may be expressed by Arabic figures or Roman numerals in the usual manner." Sec. 2578, and subd. 19, sec. 4971, Stats. (1898). We are constrained to hold that the placing of such ditto marks below the business or residence of some former subscriber was a substantial compliance with the statute cited.

3. There is, however, a more serious objection to such nomination papers. After several of them were signed by qualified electors and voters of the county and delivered to the defendant they were changed by interlining the words "for the unexpired term." As already indicated, some one was to be elected for the unexpired term and some one for the full term. The electors were at liberty to so nominate one person for the unexpired term and another person for the term beginning January 1, 1906, or they could nominate the same person for both positions. In fact one of such papers was changed by the defendant by interlining the words "for the unexpired term and the term beginning January, 1906." The nomination papers of each candidate were to have signatures of the requisite per cent. of the voters of the county, and no voter could properly sign more than one nomination paper to the same office. Subd. 3, sec. 30, Stats. (1898). "On ballots to be used at general elections" the statutes expressly provide that, "if any officer to be elected is to fill a vacancy, that fact shall be so specified upon the ballot." The primary election law declared that the provisions of the statutes previously in force in relation to holding and conducting elections and all other kindred subjects should apply to all primaries in so far as they

were consistent with the act. Secs. 12, 16, 20, 25, ch. 451, Laws of 1903; *State ex rel. Pray v. Yankee,* 129 Wis. 662, 109 N. W. 550, 551; *State ex rel. Rinder v. Goff,* 129 Wis. 668, 109 N. W. 628. Thus the statute required separate nomination papers for the unexpired term as well as for the full term. The several nomination papers so signed by the qualified electors, respectively, expressed the choice of the voters signing the same as to who should become the candidate for the office therein specified. For the person therein named, after such signatures had been obtained, to change the name of the office therein prescribed was to practice a gross fraud upon such signers of the nomination papers. True, both sets of nomination papers related to the same office at different periods, but that did not give the defendant any right to so change such papers. The nomination papers were supposed to express the choice of the subscribers, and the person therein named for nomination had no authority to change such papers so as to make them express a different choice. We must hold that the alterations made in such nomination papers were wrongful and without authority.

The question here presented is not whether the name of the defendant as such candidate should have been kept off from the official ballot. That question is fully considered by my brother WINSLOW in the late case of *State ex rel. Rinder v. Goff, supra,* and it is only necessary here to refer to it. The claim here is that, by reason of such alteration, the defendant was never legally nominated as a candidate to fill such unexpired term, and hence that the votes cast for him for that office at the election April 4, 1905, should not have been counted. This is one of the important questions in the case. Counsel have cited one case which supports their contention. *Price v. Lush,* 10 Mont. 61, 24 Pac. 749, 9 L. R. A. 467. It was there held that the provisions of the primary election law, similar to ours, "are mandatory," and that "the name of a person who is not nominated in the manner fixed by the statute cannot

lawfully be published or printed on the official ballot with
those of the lawful candidates." It was there further held:

"Officially publishing the candidacy for office of a person
not legally nominated and printing his name on the official
ballot gives him an advantage to which he is not entitled under
the Australian ballot system and will prevent his taking the
office, even if elected, although he could have announced him-
self to the public as a candidate and could then lawfully have
received the votes of any electors who chose to vote for him."
Id.

In deciding that case the court seemingly lost sight of the
right of the elector to exercise free choice at the election, and
confined its attention to the mistakes and misconduct of elec-
tion officers and candidates.

As recently suggested by this court in one of the cases cited,
contests over a primary election should be speedily settled be-
fore the regular election. *State ex rel. Rinder v. Goff,* 129
Wis. 668, 109 N. W. 628, 633. But a failure to so settle such
contests should not operate to disfranchise legally qualified
voters. We are not embarrassed by the decision in the Mon-
tana case mentioned, since that decision was modified and, in
effect, overruled by later decisions in the same court. *Stack-
pole v. Hallahan,* 16 Mont. 40, 48, 40 Pac. 80; *State ex rel.
Brooks v. Fransham,* 19 Mont. 273, 288, 289, 48 Pac. 1. In
this last case the court said:

"Where there is a neglect on the part of one to avail him-
self of this right [given him by statute], he cannot, when the
result of the election is announced and he finds himself de-
feated at the polls, ask the courts to nullify the expressed will
of voters upon the ground of the error or wrong of the county
clerk, which he could by reasonable diligence have had cor-
rected. . . . If no ante-election objection to a nomination is
made, the provisions of the statute are to be treated as direct-
ory." ·

It was there held, accordingly, that, unless the corrections
are made before the election, the ballots cannot be rejected be-
cause the nominations were not properly made. Id. In reach-

ing that conclusion the court quoted from the opinion of AN-DREWS, C. J., and followed a decision in New York, where it is said and held:

"We can conceive of no principle which permits the disfranchisement of innocent voters for the mistake, or even the wilful misconduct, of election officers in performing the duty cast upon them. The object of elections is to ascertain the popular will and not to thwart it. The object of election laws is to secure the rights of duly qualified electors and not to defeat them."

"The votes of innocent electors are not invalidated by irregularities or unauthorized acts on the part of public officers charged with the duty of preparing and printing official ballots when no irregularity or want of authority appears on the face of the ballots." *People ex rel. Hirsh v. Wood,* 148 N. Y. 142, 146, 147, 42 N. E. 536, 537.

To the same effect: *State ex rel. Crawford v. Norris,* 37 Neb. 299, 55 N. W. 1086; *Tutt v. Hawkins,* 53 Neb. 367, 73 N. W. 692; *Allen v. Glynn,* 17 Colo. 338, 29 Pac. 670; *Miller v. Pennoyer,* 23 Oreg. 364, 31 Pac. 830; *Baker v. Scott,* 4 Idaho, 596, 43 Pac. 76. See, also, *Bowers v. Smith,* 111 Mo. 45, 20 S. W. 101, overruled by *McKay v. Minner,* 154 Mo. 608, 614–617, 55 S. W. 866, so far as the statute of that state expressly required. In Michigan it has been held that "voters finding a ticket upon the official ballot are not required to determine whether it is entitled to a place thereon, but may safely rely upon the action of the officers of the law, who, they have a right to suppose, have performed their duty." *Bragdon ex rel. Loranger v. Navarre,* 102 Mich. 259, 60 N. W. 277. See *People ex rel. Hartwick v. Avery,* 102 Mich. 572, 574, 61 N. W. 4; *Horning v. Board of Canvassers,* 119 Mich. 51, 56, 77 N. W. 446. The right of voters to thus rely upon the correctness of the official ballot was discussed by counsel and considered by the court in *State ex rel. Hunt v. Stafford,* 120 Wis. 203, 216–219, 97 N. W. 1043, but was not determined, because it was held by the majority of the court that

mass conventions had not been abolished, and hence that the name of the defendant as the Democratic candidate for sheriff was rightfully on the official ballot. It·was discussed, however, by my brother MARSHALL, who had reached the conclusion that mass conventions had been abolished. It may be said, however, that it was then, and is now, the consensus of all the members of this court that the voters have the right to rely upon the correctness of the official ballot. We must hold that the mere fact that such nomination papers of the defendant were changed, as mentioned, did not of itself require the canvassing board to reject the votes cast for the defendant.

4. It is claimed that the defendant was never elected to the office of county judge, either for the unexpired term or the full term, for the reason that he procured the electors to vote for him by bribery. The statutes prescribe the persons who shall be deemed guilty of bribery, and, among other things, declare that "every person" shall be deemed guilty of bribery and be punished as therein prescribed

"who shall, directly or indirectly, by himself or by any other person on his behalf, give, lend, or agree to give or lend, or offer, *promise or promise to procure* or endeavor to procure any money *or valuable consideration,* to or for any voter, to or for any person on behalf of any voter, or to ,or for any other person in order to induce any voter to vote or refrain from voting, or do any such act as aforesaid, corruptly, on account of such voter having voted or refrained from voting at any election." Secs. 4478, 4478*a,* Stats. (1898).

The statute also declares:

"Any person who shall *obtain* any office by bribery or shall have been elected to any office at any election, at which election he shall have *induced or procured* any. elector to vote for him for such office by bribery, shall.be disqualified from holding said office, and he shall be ousted therefrom, and said office shall be deemed and held vacant, to be filled by election or appointment as other vacancies, according to law." Sec. 4481, Stats. (1898).

It was held by this court at an early day that "a vote obtained by bribery is illegal and should be rejected on proof thereof in *quo warranto.*" *State ex rel. Hopkins v. Olin,* 23 Wis. 309, 327. In support of that decision it was there said by the court that "the free exercise of the elective franchise by the qualified voters" was "a matter of the highest importance," and that "a vote obtained in direct violation of the statute" should be held to be illegal and disregarded. In a later case it was held by this court:

"(1) If a sum of money, or any property, is offered to individual electors for their votes at any election held under the laws of this state, all votes shown to have been obtained thereby will be rejected by the court in an action to determine the right to the office. (2) In like manner, a vote given for a candidate for any public office in consideration of his promise, in case of his election, to donate a sum of money or other valuable thing to a third party, whether such party be an individual or a county, or any other corporation, will be rejected as void by the court when called upon judicially to declare the result of the election." *State ex rel. Newell v. Purdy,* 36 Wis. 213.

It has been held in Missouri to be

". . . unlawful for a candidate for public office to make offers to the voters to perform the duties of the office, if elected, for less than the legal fees. An election secured by means of such offer is void." *State ex rel. Att'y Gen. v. Collier,* 72 Mo. 13. To the same effect, *State v. Elting,* 29 Kan. 397, 399.

As recently held by this court, in an action of *"quo warranto* to try title to an elective office, two questions should determine the case: How many legal votes were cast for the relator, and how many legal votes were cast for the defendant ?" *State ex rel. Leonard v. Rosenthal,* 123 Wis. 442, 453, 102 N. W. 49.

The question recurs whether it appears from the facts presented by the record that the votes cast for the defendant come within the condemnation of the statutes quoted and the principles of law thus adjudicated. The charge of bribery is based

upon a circular letter issued by the defendant March 8, 1905, as the "Republican Candidate for County Judge," and addressed to the "Voters of Juneau County," and purporting to be something for them to think about before voting for county judge. The circular, among other things, contains the following:

"The interest of the party in court demands the economical management of his case. This can be accomplished by having *all advice given and papers drawn* by the county judge, or under his direction, *free of charge.* The law does not permit the county judge to make any charge for such service in probate cases nor does it compel him to perform such service. He may perform it or he may require a lawyer to do it. . . .

*"My Platform.*

"If I should be elected county judge—

"I will not permit unnecessary delay in the transaction of business in the county court.

"I will draw all papers necessary in the settlement of estates and give the necessary advice free of charge.

"I will use my best effort to prevent any unnecessary legal contests.

"I will favor, and assist in, the settlement of estates with the least possible expense, whether for legal fees or otherwise."

One of the other candidates having criticised such offer of the defendant to give all advice and draw all papers free of charge, the defendant, eight days before the election, issued an explanatory letter, stating, among other things, in effect, that he had mailed his former letter "to practically every voter in the county," that he was charged with "no greater offense than the disinterested giving of assistance to parties in his court," and that that gave "plenty of room for the exercise of discretion and common sense in the matter of making papers and giving advice in cases in which there *is no contest*—and such cases are the only ones to which my 'plank' is intended to refer." That explanation is certainly in conflict with the language of the circular and particularly of the platform quoted,

where the defendant expressly promised, if elected, to "draw *all* papers necessary in the settlement of estates *and give the necessary advice free of charge."* Such promise was clearly within the condemnation of the statutes and adjudications cited. It may be that the defendant only intended to promise that he would draw all papers and give all necessary advice free of charge in cases where he was authorized to do so by statute, but his language is unfortunate and not to be commended.

Under the statute cited it was incumbent upon the relator, in order to oust the defendant from office, to show that the defendant obtained the office by bribery, or, at least, that he "induced or procured" some electors or "elector to vote for him for such office by bribery." Sec. 4481, Stats. (1898). The amended complaint alleges that seven electors therein named were induced and procured by the defendant by bribery in circulating such letter to vote for him for such office at said election. But we fail to find in the record any proof of any voter being induced or procured by bribery to vote for the defendant for such office. To come within the condemnation of the statute it was not only necessary that the defendant should have made the offer, but also that such voters or voter should have been "induced and procured" thereby to vote for him for that office. We must hold that there was no error in refusing to reject the votes cast for the defendant by reason of such circular letter, nor for refusing to oust him from that office by reason of that letter. As indicated in the foregoing statement, at the election April 4, 1905, the defendant received 127 votes more than any other candidate for the unexpired term of said office, and 164 votes more than any other candidate for the full term of said office. It follows from what has been said that the board of canvassers on April 13, 1905, properly declared that the defendant was duly elected to said office for the unexpired term and also for the full term, and thereupon the county clerk properly issued to him a certificate of election for the unexpired term and also for the full term.

5. It is conceded that on April 13 and 14, 1905, the defendant took and subscribed the requisite official oath and executed the requisite official bond for the unexpired term and the full term, respectively, and filed and deposited the same with the county clerk, and subsequently, and on July 17, 1905, recorded each of said official bonds in the register's office. It is contended, however, that the defendant never qualified for the office, either for the unexpired term or the full term. This is based upon two grounds: One is that such oath of office was filed with the county clerk instead of being filed "in the office of the clerk of the circuit court," as required by the statute. Sec. 2442, Stats. (1898). In support of such contention counsel seem to rely upon a decision of this court, made at an early day, holding that the failure to file such oath "in the office of the clerk of the circuit clerk," as thus required, operated to vacate the office, notwithstanding such official oath had been filed with the county treasurer. *State ex rel. Lutfring v. Gœtze,* 22 Wis. 363. The statute then required such oath to "be filed in the office of the clerk of the circuit court," the same as now. Sec. 92, ch. 13, R. S. 1858. But another provision of the statute under which that decision was made expressly declared that every such office "shall become vacant" upon the "refusal or neglect" of the person elected "to take his oath of office, or to give or renew his official bond or to deposit such oath or bond within the time prescribed by law." Sec. 2, ch. 14, R. S. 1858. In pursuance of a suggestion made in the opinion of the court in that case the provision of the statute in respect to vacancies was changed and now reads as found in sec. 962, Stats. (1898). That omits therefrom the provision declaring a vacancy in case of refusal or neglect to deposit or file such official oath in the office of the clerk of the circuit court. In the absence of such express declaration the requirements of the statutes in such cases are generally construed to be directory merely and not mandatory. Mechem, Pub. Off. §§ 262, 266; 23 Am. & Eng. Ency. of Law (2d ed.) 357. Here the requisite oath of office was taken by the de-

fendant immediately upon receiving the certificates of election. The only objection to that oath is that it was filed in the wrong office. Even that objection is not mentioned nor referred to in the amended complaint. We must hold that the office to which the defendant was elected did not become vacant by reason of such oath being filed in the office of the county clerk instead of the office of the clerk of the circuit court.

The other reason for claiming that the defendant never qualified for the office is that his official bonds, which were executed and filed in the office of the county clerk immediately after he received his certificates of election, were not recorded in the register's office until July 17, 1905—about three months after they were so executed and filed. Undoubtedly the statutes required the bonds so executed to "be recorded" by the defendant at his own cost "in the office of the register of deeds," and that the same should "then be filed with the county clerk." Secs. 2442, 702, Stats. (1898); sec. 1, ch. 376, Laws of 1903. What has been said about statutes being regarded as directory is peculiarly applicable to the delay in recording such bond. Thus, it is said by the text-writer mentioned:

"The statutes requiring a bond to be given ordinarily prescribe that it shall be given within a fixed time after the officer's election or appointment. These provisions *as to time,* however, though often couched in most explicit language, are usually construed to be directory only and not mandatory. A failure to give the bond within the time prescribed does not, therefore, *ipso facto* work a forfeiture." Mechem, Pub. Off. §§ 265, 266. See, also, *Glavey v. U. S.* 182 U. S. 595, 21 Sup. Ct. 891; *Cronin v. Stoddard,* 97 N. Y. 271; *Schuff v. Pflanz,* 99 Ky. 97, 35 S. W. 132; *People ex rel. Bennett v. Benfield,* 80 Mich. 265, 45 N. W. 135; *Cawley v. People,* 95 Ill. 249.

We must hold that the office did not become vacant by reason of the defendant's delay in recording the bonds, and that the defendant duly qualified for the office.

6. It is claimed on the part of the relator that his right to the office by virtue of his appointment by the governor was continued and extended by ch. 91, Laws of 1905, from June 5, 1905, when the right to hold such office under such appointment would otherwise have terminated, to January 1, 1906. That act was approved by the governor April 20, 1905, and was published and went into effect April 21, 1905, not only after the defendant had been declared to be elected, but also a week after he had thus received his certificates of election for the unexpired term and the full term and filed the requisite oath of office and bond as stated. Such contention is based upon the provisions of the act, which, eliminating what is inapplicable here, declare:

"In all cases of vacancy in the office of . . . county judge, the election to fill such vacancy shall be held on the first Tuesday of April next after the vacancy happens: . . . Provided that no election to fill a vacancy for . . . county judge shall be held at the time of holding the regular election for such office. . . . When a vacancy shall occur in the office of county judge, . . . the governor shall appoint such judge, and the person so appointed shall hold until the first Monday of June next succeeding an election to fill such vacancy. . . . All county judges heretofore appointed to fill vacancies shall hold and continue in office until the first Monday of January, 1906. . . .

"Sec. 2. This act shall take effect and be in force from and· after its passage and publication." Secs. 1, 2, ch. 91, Laws of 1905.

The last clause quoted indicates an intention that the act should be prospective in its effect and force and not retroactive. Such is the ordinary rule of construction where there is nothing in the act to indicate a contrary intent. Here the only provision indicating a contrary intent is the clause declaring, in effect, that "all county judges" theretofore "appointed to fill vacancies" should "hold and continue in office until the first Monday of January, 1906," and that clause was expressly stricken out of the statute and repealed June 6,

1905. Ch. 301, Laws of 1905. As already indicated, the statutes in force April 4, 1905, required that some one should on that day be elected county judge for the unexpired term of Judge BEEBE, deceased. As we have seen, the defendant was elected to that office on that day and, in legal effect, duly qualified a week before the passage of ch. 91, Laws of 1905. Such election and qualification gave to the defendant the legal right to the possession of the office June 5, 1905. He appeared at the office on that day and demanded the possession of the same, but the relator refused to give it up on the ground that his right to the office had been continued and extended by the clause of the act quoted. On the next day that clause was expressly repealed, and on the day after, June 7, 1905, the defendant again appeared at the office and demanded of the relator the possession thereof, but the relator again refused to give up such possession. The question recurs whether the defendant's right to the office during such unexpired term—that is to say, from June 5, 1905, to January 1, 1906—was taken from him by the clause of the act thus repealed. The contention of the relator seems to be that, as the constitution expressly authorized the legislature "to abolish the office of judge of probate in any county, and to confer probate powers upon such inferior courts" as might be established in such county, and since the legislature had conferred such powers upon county courts, therefore the office of county judge is purely statutory.

"In the absence of constitutional restriction it is entirely competent for the legislature of a state to make provision as to when the term of an incumbent, elected or appointed to fill a vacancy, shall expire." 23 Am. & Eng. Ency. of Law (2d ed.) 419.

The constitution also declares that "all county officers whose election or appointment is not provided for by this constitution shall be elected by the electors of the respective counties . . . as the legislature shall direct." Sec. 9, art. XIII, Const.

The effect of that provision was considered at length by my brother MARSHALL in *O'Connor v. Fond du Lac,* 109 Wis. 253, 264–270, 85 N. W. 327. But little need here be added to the discussion. Here the defendant was elected in the manner prescribed by the legislature to fill the unexpired term from June 5, 1905, to January 1, 1906. After being so elected and qualified it was in our judgment incompetent for the legislature, without cause, to bar him from taking the office and to designate some one else to fill the office during the portion of the unexpired term for which he was so elected. The prescribing of laws for the election or appointment to an office is a legislative function, but that does not include the power of making the appointment itself, much less the nullification of an election held as prescribed by law. *State ex rel. Jameson v. Denny,* 118 Ind. 382, 21 N. E. 253; *State ex rel. Worrell v. Peelle,* 121 Ind. 495, 22 N. E. 654. As said in the *O'Connor Case, supra:*

"Power is not left with the legislature in its discretion to appoint or elect all officers whose election or appointment is not provided for in the constitution." 109 Wis. 266, 85 N. W. 332.

As said in the same case:

"The continuance of a person in office by legislative interference, beyond the specific term for which he was elected or appointed, is equivalent to a new appointment to the office, and void if the office be one that the legislature cannot fill by direct appointment or election." 109 Wis. 268, 85 N. W. 332, citing *State ex rel. Hamilton v. Krez,* 88 Wis. 135, 59 N. W. 593.

We have discussed this question as though the clause in ch. 91, Laws of 1905, relied upon had not been repealed the next day after the defendant was authorized to take possession of the office. The repeal, however, would seem to have taken from the relator any plausible ground for contending that his term of office was continued and extended by virtue of the provisions of that chapter. The result is that the defendant

was rightfully entitled to the possession of the office at the time he so demanded the same.

7. This being so, we must hold that he was justified in taking possession as he did July 28, 1905.

*By the Court.*—The judgment of the circuit court is affirmed.

TIMLIN, J., took no part.

A motion for a rehearing was denied April 9, 1907.