STATE, EX REL. GEORGE H. HUGHES, RELATOR, v. FRANKLIN R. HOGEBOOM, RESPONDENT.

FILED JUNE 23, 1919. No. 20949.

Elections: NONPARTISAN JUDICIARY ACT: WRITING NAMES ON BALLOT. Under the nonpartisan judiciary act, the voter may write in upon the primary election ballot the name of any person as his choice for nominee for the office, and such votes shall be counted; and "the two persons who received the highest number of votes in said primary" shall have their names placed on the ballot for the general election as the nominees for judges on the nonpartisan judiciary ballot. Rev. St. 1913, sec. 2211.

Original application in *quo warranto* to determine right to office of county judge. *Writ allowed.*

*J. B. Barnes, George W. Ayres* and *W. E. Hill,* for relator.

*Henry E. Dress* and *John A. Miller, contra.*

ALDRICH, J.

This is an original action in *quo warranto,* brought in this court to test the right to the office of county judge of Logan county, of the respondent, Franklin R. Hogeboom. The relator and claimant to the office is George H. Hughes.

At the primary election on August 21, 1918, the name of the respondent was printed on the primary ballot as a candidate for the nomination of county judge in and for Logan county.

The relator did not file for this office, but nine voters wrote his name in and put a cross opposite his name, and the canvassing board counted these votes for him. The respondent received 191 votes at this nonpartisan primary election, and the relator received 9 votes, and at the general election following in November the names of the respondent and the relator were printed upon the official ballot and voted for at the regular November election; the relator receiving 200 votes and the respondent 180. The relator at the close of the primary election and within ten days paid his filing fee of $10 as is required by the statute. At the close of the official election in November, 1918, both respondent and relator filed the required oath and bond as county judge, and the county board approved both bonds, not knowing to whom the office belonged. The respondent is in possession of the office and refuses to relinquish it to the relator, and the relator brings this action. The county clerk, notwithstanding the relator received a majority of the votes cast at the election for county judge, had nevertheless issued a certificate of election to the respondent.

One of the issues to be determined herein is: Was the relator, George H. Hughes, legally nominated at the primary? The second question is: Should the ballots cast for relator at the general election be considered as legally electing him? It is obvious in the general election laws of this state that nonpartisan law predominates and must be taken into consideration in the election laws of our state, and that these laws must be so interpreted as to provide that a voter shall have his free and untrammeled choice of a candidate for office. This is fundamental and one of the essential requisites to a citizenship that is the responsible architect for free institutions. *State v. Yankee,* 129 Wis. 662.

In order that a voter may exercise his free choice in a candidate for public office, and in order that he might not further be hemmed in and bound by some arbitrary

rule, the law provides, among other things, in section 1995, Rev. St. 1913: "In each division, and beneath all candidates placed there by nomination or petition, a blank space shall be provided, into which electors may write the name of any person for whom they wish to vote and whose name is not printed upon the ballot." So it was never the intention of the legislature to limit the voter to the candidate whose name is printed on the ballot, but left him to the choice of writing in the name of any person for whom he wished to vote. Section 2211, Rev. St. 1913, amended in chapter 37, Laws 1917, being a portion of the nonpartisan judicial act, provided: "In all other respects the general laws in force in this state respecting the holding, conducting and declaring the results of any such general election shall apply so far as the same are applicable and not inconsistent with the provisions of this article." Thus it is plain this judicial act provides that every section of the election laws of this state shall be read into and become a part of this act in so far as they are not in conflict with the provisions of the act, and necessary to its plan and purpose, and every printed official ballot of this nonpartisan judicial act provides, according to law, a blank space for the voter to write in the name of any one whom he wishes to vote for. In other words, it is the statutory provision of the election laws of this state that a blank space be left for persons not named "in each division, and beneath all candidates placed there by nomination or petition, a blank space shall be provided, into which electors may write the name of any person for whom they wish to vote and whose name is not printed upon the ballot." Rev. St. 1913, sec. 1995. Thus it is the policy of the election laws of this state to make the provision so liberal and unhampered that a voter can exercise the right of suffrage for whomever he pleases, and shall not be bound to vote exclusively for those whose names are printed on the ballot, but for any one whom he chooses to vote for, by writing in his name and placing a cross opposite.

Section 2209 provides: "All candidates for * * * county judge, shall file with the officer whose duty it is to issue the certificate of election to the aforesaid officers, a statement of such candidate in substantially the following form." Then follows the form and petition of affidavit for judge. In section 2210 there is provided the form and the nonpartisan ballot for judiciary officers; also this same section provides: "In all other respects the paper ballot to be used in such primary shall be the same as authorized by the 'Australian ballot law' of this state. In printing the aforesaid ballot, the names shall not be arranged alphabetically, but shall be rotated according to the following plan." It is also provided in this same section that "the general primary laws of the state, except in so far as the same have been modified and changed by the provisions of this article, shall govern and control." Thus it is clear that these sections of the nonpartisan judiciary act are to be considered as a part of the general primary law of the state, except in so far as the primary law has been modified and changed by the provisions of this section just quoted.

Then it is plain under the provisions of the section just quoted and the provisions of the primary election law that, when the voter at the primary election wrote in the name of the relator and placed a cross opposite, the voter was exercising, not only his statutory right, but as well the right recognized by the general election laws of this state.

The respondent and the relator appeared to have been the only candidates who received the highest number of votes at the primary election, and therefore were entitled to have their names printed upon the ballot for the general election that followed in November. This section 1995, Rev. St. 1913, provides for a "blank space to be left to vote for persons not named." Thus when the name of the relator was written in by nine voters at the primary election, these votes were cast in and by authority of a statutory provision that gave the author-

ity to the officers to place the name of the relator, together with that of respondent, upon the ballot for the general election in November. It thus appears from the various provisions and from the general election laws of this state that the relator was duly and legally nominated at the election held on August 21, 1918. Now the respondent had from the 21st of August, 1918, up to any time before the general election to raise the objection that he raised in this proceeding. This court has held that, if an objection is to be raised, it must be done before the general election. *State v. Norris,* 37 Neb. 299.

The general purpose of holding an election is to determine the intention and choice of electors of the state and nation as to what is their manifest desire, and as to who shall perform the duties of a certain political office, and the only way to ascertain this is from the ballot, and whatever there may be in the preparation of such ballot, these cannot be urged for the first time after the election, because this method would clearly defeat the express intention of the voter, and that is the fundamental purpose of holding an election; so then it follows that the voters of the state cannot be limited to those candidates who have filed their names or their petitions to be placed on the ballot at the primary, and, in order to have the proceeding free and untrammeled, it is permissible both by statute and by custom for a voter to name his own candidate, and the name of the person so written in and voted for by the elector has the same standing as though his name were printed on the ballot. This proceeding then was commenced some time after the election in November, when it is the law of the state that, whatever objection respondent might have to urge, it should be instituted in the proper forum sometime between the primary election in August and the general election in November.

To allow proceedings to be instituted any time after election would simply mean the defeat of the clearly expressed intention of the voter. *Tutt v. Hawkins,* 53 Neb. 367. So important is the policy that a voter shall

have the privilege of voting for whomever he pleases that some states have gone so far as to hold that where at the same election a county judge was to be elected for an unexpired term, and one for a succeeding full term, and after several nomination papers were signed by qualified electors, the candidate changed them by interlining the words for the unexpired term, though by reason of such alteration the party was not legally nominated to fill the unexpired term, the votes cast for him for such office at the election should nevertheless have been counted in his favor. *State v. Bunnell,* 131 Wis. 198. It would therefore seem as a matter of law that the relator had the right to have his name placed upon the ballot at the general election in November. Thus it appears from the record that the relator and the respondent were both nominated at the general primary election. Then it follows that at the general November election he would be elected who received the highest number of votes cast at this election. The record discloses that at the general election in November following the primary in August, 1918, the relator received the majority of all the votes cast at this general election, and therefore was elected, and is entitled to hold the position of county judge in and for the county of Logan, this state, and the county clerk in issuing the certificate of election to the respondent did so without authority of law, and this arbitrary, illegal act cannot be sanctioned or recognized by this court. The title, possession, honor and emoluments of the office of county judge in and for Logan county belong to the relator herein; he having received a majority of the votes cast at the last general election for this position. The respondent is herewith ordered to turn over to the relator herein all books, records and property belonging to the office of county judge of Logan county, and the county clerk of this same county is hereby ordered and directed to issue to the relator herein a certificate of election.

JUDGMENT OF OUSTER.

SEDGWICK, J., concurs in the conclusion.