WITHEY *v.* BOARD OF STATE CANVASSERS.

1. ELECTIONS — PRIMARY ELECTIONS — RECOUNT — CERTIFICATE OF NOMINATION—MANDAMUS.

Where the. time within which the primary election law (1 Comp. Laws 1915, § 3547) requires the clerks of the counties affected to transmit certified copies of the number of votes received by candidates for office had already ex. pired, and the board of State canvassers had before it the official returns, apparently regular and as required by law, of every county in a judicial circuit, and it made the statutory canvass and issued the certificates, mandamus will not lie, at the instance of a defeated candidate, to recall the certificate issued by it, although a recount in one precinct petitioned for by him was undecided, since he could not affirmatively show that the certificate was in fact issued to the wrong candidate.

2. SAME—CERTIFICATE OF NOMINATION.

If a recount subsequently demonstrated that petitioner in

fact had a majority, and the certification should be changed, he could then affirmatively show a right entitling him to relief

Mandamus by Charles A. Withey against the board of State canvassers to compel said board to recall a certificate issued by it showing the nomination of Hal L. Cutler as a candidate for the office of circuit judge of the nineteenth judicial circuit. Submitted March 22, 1917. (Calendar No. 27,836.) Writ denied March 22, 1917.

*Cummins & Nichols,* for relator.

*Alex. J. Groesbeck,* Attorney General, and *L. W. Carr,* Assistant Attorney General, for respondent.

STEERE, J. Plaintiff seeks by mandamus to compel defendant to recall a certificate issued by it on March 20, 1917, showing the nomination of Hal L. Cutler as Republican candidate for the office of circuit judge of the nineteenth judicial circuit, at the primary election held in that circuit on March 7, 1917. The nineteenth circuit is composed of four counties—Osceola, Lake, Mason, and Manistee. Plaintiff and Cutler were opposing candidates for the Republican nomination for circuit judge at that election, and Thomas Smurthwaite was the unopposed Democratic candidate. By the original canvass and returns, plaintiff was found to have a majority of 12 for the Republican nomination. On March 13th, Cutler petitioned for a recount of the votes cast in two precincts of Richmond township in Osceola county, and soon thereafter plaintiff petitioned for a recount of Lake county. By consent of plaintiff the recount on Cutler's petition was taken up and later Cutler filed petitions for recounts in two other townships in Osceola county. The last recount petitioned for by him was completed on March 19th. Plaintiff then petitioned for a recount of one precinct in Sherman township in Osceola county.

The time within which section 38 of the primary election law (1 How. Stat. [2d Ed.] § 542 [1 Comp. Laws 1915, § 3547]) requires the clerks of each county affected to transmit to the secretary of State certified copies of the number of votes received for candidates for the office had already expired, and defendant through the attorney general called for returns from those delinquent, which were then made. The so-called "absent voter's law" (Act No. 270, Pub. Acts 1915 [1 Comp. Laws 1915, § 3798]) requires election ballots to be printed and in the hands of election inspectors at least 12 days before the day of election (in this instance April 2d), and on March 20th defendant at last had before it duly authenticated returns from all counties of the nineteenth circuit, fair on their faces, in regular form and certified as required by law, with no report or intimation upon them that a petition for a recount had been made or was pending, except a notation to that effect on the return from Osceola county, in which plaintiff's petition touching one precinct in Sherman township had not been acted upon. Defendant thereupon proceeded to canvass the votes as shown by the returns, finding that they showed Cutler was nominated as the Republican candidate for the office of judge of the nineteenth circuit by a majority of 33 votes and Smurthwaite as the Democratic candidate, without opposition, issuing certificates accordingly.

The statute fixes a limit of time for defendant to perform the duty of canvassing the returns made to it from the several counties and certifying the nominees shown by such return to the respective boards of election commissioners, who, with the information so furnished, are required to have the ballots printed and ready before a stated time. Defendant's duties in the premises were purely ministerial. It had before it the official returns, apparently regular and as required by law, of every county in the circuit, and in

performance of its statutory ministerial duty it made the canvass and issued the certificates. Presumptively defendant performed its official duty, and *prima facie* the certificates it issued authorize the names it certified to be printed on the official ballot. The infirmity of plaintiff's application for affirmative relief by mandamus is that he was not then in a position to show that the result of the election was otherwise and the certificate in fact wrong, or that he had a clear, or better, right to the certificate than the party to whom it was issued. He yet could proceed with any recount which he had properly petitioned for, and any canvassing board which refused or delayed unreasonably after demand might be compelled to act by proper legal proceedings. If a recount subsequently demonstrated that he in fact had a majority and the certification should be changed, he could then affirmatively show a clear right entitling him to relief, as in *Beakes v. Board of State Canvassers*, 172 Mich. 408 (137 N. W. 958). It is true, as pointed out, that this court there said that a return by a county board of canvassers of the first count before the time expired in which relator could file his petition for a recount was premature and invalid, but did not intimate that relator could avail himself of it before establishing by a subsequent recount his paramount right to the nomination against his opponent who had been found the nominee by an authorized board in the performance of its ministerial duties.

"The necessary effect of the primary law, however, is to give an official character to a primary nominee. It may not be strictly accurate to call him a public officer, but the law gives him a certain and definite standing and endows him with at least one valuable privilege or right which he may enforce. Until the time of the election he is guaranteed, and in fact holds, a recognized legal position, which may be called, in default of a better term, a *'quasi* office.'" 9 R. C. L. p. 1090.

"So, when the vote has been canvassed by the proper board and he has received his certificate, he is at once in possession of his *quasi* office so far as any one can be in possession of it, and entitled to its single privilege, namely, the right to have his name put on the official ballot in the proper place, as against all the world, until in some proper action or proceeding to contest his right it is decided that another person was in fact nominated." *State, ex rel. Rinder,* v. *Goff,* 129 Wis. 668 (109 N. W. 628, 9 L. R. A. [N. S.] 916).

As it does not now appear that any one is entitled by a better right to the certificate in question, the court must decline to interfere by mandamus to annul a ministerial act performed in the line of its statutory duty by a public ministerial board.

The merits of mutual imputations as to responsibility for delays and resultant irregularities need not be considered or passed upon here, but it seems obvious that the primary responsibility and fault rests in the law itself followed by authorized resort to certain of its provisions. As the law now stands, it will always afford opportunity for confusion and delays by which rights may be lost or wrong done. The time provided in which to do the numerous things required is limited and none too long when everything runs smoothly. As illustrated in this case, the primary election was on March 7th, to be followed on April 2d by the election to which it was preliminary. The county canvass came on the second Tuesday succeeding, within 10 days after the election the county returns were required to be certified to the secretary of State, who was required to appoint a meeting not later than 20 days after election, when the canvass should be made and the result forthwith certified to the county boards of election commissioners; but this 20 days is curtailed by the absent voter's law requiring the county election commissioners to print and distribute the ballots to inspectors at least 12 days before election. With diligence and prompt action by the various officers whose

duties are involved and no especial interferences, the various requirements of the election law can be observed within the times prescribed, and the law found workable without serious confusion, had not the legislature thrown a wrench into the machine by the provisions in section 40 of the law authorizing, without apparent limit of number or time except it shall be on or before the day or days when the board meets, petitions for recounts by which, with the attendant delays and taking one voting precinct at a time, it is possible by timing the events to that end for sessions of the board to be protracted indefinitely, according to the number of precincts available. The obvious remedy for this is beyond the authority of the courts.

For the foregoing reasons, the writ is denied.

Ostrander, Bird, Moore, and Fellows, JJ., concurred. Kuhn, C. J., and Stone and Brooke, JJ., did not sit.