468 ' SUPREME COURT OF WISCONSIN. [OCT.

State ex rel. Barber v. Circuit Court, 178 Wis. 468.

STATE EX REL. BARBER, Relator, vs. CIRCUIT COURT FOR
MARATHON COUNTY and another, Defendants.

*October 25—October 26, 1922.*

*Elections: Right to vote: Regulation by legislature: Jurisdiction of
courts: Primary elections: Eligibility of nominee as con-
dition to a place on official ballot: Supreme court: Original
jurisdiction: Ordinary remedies inadequate: Prohibition.*

1. Where the final determination of an action begun in the cir-
cuit court will not be reached in the regular and ordinary
course of legal procedure until it would be too late to afford
the relator adequate relief, this court will assume original
jurisdiction although objection was not made to the jurisdic-
tion of the court below and no opportunity was given to the
trial court to determine the question of whether it had juris-
diction.

2. The right of a citizen to vote is fundamental and may not,
under our constitution and laws, be destroyed or even un-
reasonably restricted.

3. Ever since the Australian ballot was adopted in Wisconsin
there has been a rapidly expanding body of statutory law
relating to elections; and while the right of the legislature
to regulate the right of franchise is acknowledged, such
regulation cannot proceed to the extent where it materially
impairs or destroys the right of the elector to exercise a
free choice at the election.

4. Courts will refrain from exercising any jurisdiction in purely
political matters where personal rights are not involved.

5. When the legislature has adopted regulatory laws specifying
the manner in which political rights shall be exercised, thus
creating new rights and extending new privileges, these
rights and privileges, equally with other rights and privileges,
become proper subjects of judicial action.

6. While the right to a secret ballot may not be impaired, the
right to a place on· the official ballot is a proper matter of
legislative regulation; and when the legislature has specified
conditions upon which a nominee shall be entitled to a place
upon the official ballot, it has created a right which may
be protected and enforced by the courts.

7. The right of a candidate to have his name upon the official
ballot is one created by the legislature, and until the legis-
lature has prescribed as a part of the qualifications of a

person who is seeking a place upon the official ballot that he shall be eligible to the office for which he is a candidate, neither the courts nor any administrative officer can so limit his right.

8. There is no jurisdiction anywhere to determine the eligibility of a nominee to hold office until after election, although the non-eligibility be plainly disclosed.

9. The only requirement in the statute as a condition precedent to the right of a nominee to a place upon a ballot is that found in sub. (3), sec. 5.17, Stats., that he shall file a declaration that if elected he will accept the office and qualify therefor; and a condition that the nominee shall be eligible to office will not be implied.

10. Where the legislature had not imposed, as a condition precedent to a candidate's right to have his name placed upon the official ballot, that he be eligible to the office if elected, courts have no jurisdiction to do so.

APPLICATION for writ of prohibition invoking the original jurisdiction of this court. *Writ granted.*

The petition alleges that *Joseph Barber* has resided for more than one year within the state of Wisconsin and is a qualified elector of the Twenty-fifth senatorial district, consisting of Lincoln and Marathon counties, and is in all respects fully qualified and eligible to hold the office of state senator under the laws and constitution of the state of Wisconsin; that at the primary election held on the first Tuesday of September, A. D. 1922, he was regularly and duly nominated state senator on the Republican ticket for the Twenty-fifth senatorial district; that thereafter the state board of canvassers duly determined that he was so nominated and filed their certificate with the secretary of state as required by sec. 5.16, Stats.; that on the 11th day of October, 1922, the secretary of state, pursuant to sec. 6.19, Stats., caused to be filed with the county clerks of Lincoln and Marathon counties a proper certificate of nomination; that by reason thereof it became and is the duty of the said county clerks to cause the name of the relator to be printed in the appropriate official ballot as Republican candidate for

State ex rel. Barber v. Circuit Court, 178 Wis. 468.

the office of state senator from the Twenty-fifth senatorial district of the state of Wisconsin; that on the 17th day of October, 1922, *Ralph E. Smith* caused to be served upon the relator and upon the county clerks of Lincoln and Marathon counties a summons and complaint; that in the complaint it is alleged, among other things, that relator is ineligible. to the said nomination and to the office of state senator for said district, demanding that the nomination of the petitioner be declared null and void and that the defendant county clerks be restrained from printing the name of the relator upon the official ballot to be used at the general election for the year 1922; and further restraining, pending trial, the distribution of any such ballots.

Upon the filing of said summons and complaint an order to show cause was issued, returnable at the court-house in the city of Merrill, Lincoln county, Wisconsin, on the 23d day of October, 1922, at 10 o'clock in the forenoon, requiring relator to show cause why an injunction should not be granted restraining the county clerks of Lincoln and Marathon counties from printing and distributing official ballots containing the name of the relator, and by said order the county clerks of Lincoln and Marathon counties were ordered to desist and refrain from printing and distributing official ballots containing the name of the relator pending further order of the court. Copies of the summons and complaint and of the order to show cause were attached to the petition, from which it appears that the sole ground upon which relief was sought and the action begun in the circuit court for Marathon county is that, as appears from the allegations of the complaint in said action, *Joseph Barber* is ineligible to the office of state senator for the reason that he has heretofore been convicted of an infamous crime, to wit, the crime of adultery, in a court within the state of Wisconsin; that upon such conviction he was sentenced to serve one year in the Wisconsin state prison at Waupun; that said sentence was duly executed; that a

State ex rel. Barber v. Circuit Court, 178 Wis. 468.

pardon was granted by the act of the governor of the state of Wisconsin on the 18th day of February, 1899, the conviction having occurred on the 14th day of March, 1898, by the terms of which pardon it appears in the language of the pardon:

"Now, therefore, know ye, that in consideration of the premises, I, as governor of the state of Wisconsin, have pardoned, remised and released, and by these presents do pardon, remise and release the said *J. L. Barber* of and from the offense whereof in the said court he stands convicted as aforesaid, and from all sentences, judgments and executions thereon; hereby restoring to him all the rights of citizenship forfeited by him in consequence of the said offense or of the said conviction. This pardon is granted to restore citizenship."

The petition further sets out that the relator has no speedy or adequate remedy by appeal or otherwise in the premises; that the determination of the county clerks of Lincoln and Marathon counties must be made on or before October 30, 1922; that time for answering in said action expires on November 6, 1922.

It further appears from the allegations of the petition that the Honorable A. H. REID, Judge of the Sixteenth judicial circuit, upon issuing the order to show cause in said matter, immediately requested the Honorable BYRON B. PARK to hear, try, and determine said action and upon said request the said Honorable BYRON B. PARK consented thereto. Upon the return of the order to show cause why a writ of prohibition should not issue the respondents moved that the petition be denied and the writ quashed. Upon the issues so made the cause was fully argued on October 25th. On October 26th judgment of the court was rendered, by virtue of which the writ was granted as prayed for, opinion to be subsequently filed.

For the relator there was a brief by *Olbrich, Brown & Siebecker* of Madison and *Geo. W. Lippert* of Wausau, and oral argument by *Mr. Olbrich* and *Mr. Lippert*.

State ex rel. Barber v. Circuit Court, 178 Wis. 468.

*Claire B. Bird* of Wausau, counsel, for the defendants.

For the defendant *Smith* there was a brief by *G. M. Sheldon* of Tomahawk, attorney, and *Brown, Pradt & Genrich* of Wausau, of counsel, and oral argument by *Fred W. Genrich.*

The following opinions were filed November 8, 1922:

ROSENBERRY, J.   The question raised here is whether or not the circuit court for Marathon county has jurisdiction to enjoin the county clerks of Lincoln and Marathon counties from placing upon the official ballot, to be used at the general election, the name of *Joseph Barber,* who is the regularly nominated candidate of the Republican party, for the office of state senator for the Twenty-fifth senatorial district, on the ground that said *Barber* is not eligible to hold the office of state senator if elected.

Before passing to the consideration of the merits we shall consider whether or not this court should assume original jurisdiction of this matter.   Although objection was not made to the jurisdiction of the court below and no opportunity was given to the trial court to determine the question of whether or not it had jurisdiction, it appears here quite conclusively that a final determination of the controversy set forth in the complaint in the action begun in the circuit court for Marathon county could not be reached in the regular and ordinary course of legal procedure until it would be too late to afford the relator here adequate relief.   Therefore, under the authority of *State ex rel. Cook .v. Houser,* 122 Wis. 534, 100 N. W. 964, and *State ex rel. Rinder v. Goff,* 129 Wis. 668, 109 N. W. 628, we are of the opinion that this court should assume original jurisdiction of this action.

No question is raised as to the regularity of the proceeding which resulted in. nomination of relator as a candidate of the Republican party and which, but for his alleged

26]　　AUGUST TERM, 1922.　　473

State ex rel. Barber v. Circuit Court, 178 Wis. 468.

ineligibility, admittedly entitled him to a place upon the official ballot. In the solution of this question it is necessary for us to recur briefly, as the constitution enjoins us to do, to fundamental principles.

Nothing can be clearer under our constitution and laws than that the right of a citizen to vote is a fundamental, inherent right. *State ex rel. McGrael v. Phelps,* 144 Wis. 1, 15, 128 N. W. 1041. It is a right which has been most jealously guarded and may not under our constitution and laws be destroyed or even unreasonably restricted. In view of the discussion in *State ex rel. McGrael v. Phelps, supra,* as to the nature of the right and its historical development, we need do no more than discuss its development in our own jurisdiction.

At the time of the adoption of the constitution and for many years thereafter the qualified electors of the state exercised the right of suffrage with practically no restrictions. Legislation supplementing the constitution fixed the time and place of holding elections, prescribed the qualifications of electors, and how in case of controversy they might be determined, and each elector went to the ballot box and deposited therein his ballot, indicating his choice for the various offices to be filled at the election. There were great varieties of ballots—no particular color or quality of paper required, they might be written or printed or partly written and partly printed, stickers might be used, and there was practically no restriction upon the freedom of action of the individual elector in respect to the casting of his ballot. He was in the exercise of a political right, guaranteed to him by the constitution, and there was no jurisdiction in any court to restrict in any manner the exercise of that right. If he chose to cast his ballot for a candidate who was ineligible or unworthy it was a matter resting wholly in his own discretion. No court might restrain him or direct him in respect to the persons for whom he voted. He was

entitled to cast his separate ballot for the persons of his choice, regardless of eligibility or qualification.

In *State ex rel. Wood v. Baker,* 38 Wis. 71, 86, Mr. Chief Justice RYAN said:

"But the constitution vests and warrants the right at the time of election. And every one having the constitutional qualifications then, may go to the polls, vested with the franchise, of which no statutory condition precedent can deprive him. Because the constitution makes him, by force of his present qualifications, 'a qualified voter at such election.' Art. III, sec. 1. Statutes cannot impair the right, though they may regulate its exercise. Every statute regulating it must be consistent with the constitutionally qualified voter's right of suffrage when he claims his right at an election. Then statutes may require proof of the right, consistent with the right itself. And such we understand to be the theory of the registry law: 'to guard against the abuse of the elective franchise, and to preserve the purity of elections;' not to abridge or impair the right, but to require reasonable proof of the right. It was undoubtedly competent for the legislature to provide for a previous registry of voters, as one mode of proof of the right; so that it should not be a condition precedent to the right itself at the election, but, failing the proof of registry, left other proof open to the voter at the election, consistent with his present right."

Sec. 28, ch. 6, R. S. 1849, provided:

". . . Each person offering to vote shall deliver his ballot to one of the inspectors, in presence of the board; the ballot shall be a paper ticket, which shall contain, written or printed, or partly written and partly printed, the names of the persons for whom the elector intends to vote, and shall designate the office to which each person so named is intended by him to be chosen; . . ."

This section was rewritten and appears as sec. 3, ch. 85, Laws 1857, and as rewritten became sec. 29, ch. 7, R. S. 1858, and was re-enacted without change as sec. 32, ch. 5, R. S. 1878, excepting that by sec. 32 it was provided that

the inspector receiving the ballot should not open or examine it.

By ch. 248, Laws 1889, the so-called Australian ballot system was adopted in this state. It was expanded and amplified by ch. 379, Laws 1891. Ever since that time there has been a rapidly-expanding body of statutory law in this state relating to the manner in which the elector may exercise his right of suffrage, including methods of nominating candidates and related matters. The court has many times been called upon to interpret and apply these laws. *State ex rel. Runge v. Anderson,* 100 Wis. 523, 76 N. W. 482; *State ex rel. Hunt v. Stafford,* 120 Wis. 203, 97 N. W. 921, 1043; *State ex rel. Dithmar v. Bunnell,* 131 Wis. 198, 206, 110 N. W. 177; *State ex rel. Cook v. Houser,* 122 Wis. 534, 100 N. W. 964; *State ex rel. Van Alstine v. Frear,* 142 Wis. 320, 125 N. W. 961.

In *State ex rel. Runge v. Anderson,* 100 Wis. 523, 76 N. W. 482, it was argued that the provisions of ch. 379 of the Laws of 1891 as amended (Australian Ballot Law) were void because it violated sec. 3 of art. III of the constitution of the state of Wisconsin, which provided that all votes shall be by ballot and that legislation prescribing the manner and form of the ballot deprived the elector of the right to make his own ballot and deposit it as prepared by him. In response to that the court said:

"The official ballot, so called, is not complete when furnished to the elector as he enters the booth to prepare his ballot. It is a mere form for a ballot. When marked and prepared by the voter so as to show his choice at the election, then, and not till then, does it become his constitutional ballot; and it is not, and cannot be, contended but that the freest opportunity practicable is given under the law for the voter to deposit such ballot so as to conceal his choice of candidates, indicated therein, if he so desires. It follows that no constitutional guaranty in regard to voting by ballot is in any way contravened."

The fundamental principle underlying all of these stat-

utory enactments is stated in *State ex rel. Van Alstine v. Frear,* 142 Wis. 320, 341, 125 N. W. 961:

"These decisions [referring to *State ex rel. Runge v. Anderson,* 100 Wis. 523, 76 N. W. 482, and other decisions there cited] establish the rule that legislation on the subject of elections is within the constitutional power of the legislature so long as it merely regulates the exercise of the elective franchise and does not deny the franchise itself either directly or by rendering its exercise so difficult and inconvenient as to amount to a denial."

Following the laws regulating the exercise of the right of suffrage came other laws regulating the manner in which the names of candidates might be placed upon the official ballot. Almost immediately upon the adoption of the primary election law (ch. 451 of the Laws of 1903) there arose a controversy as to the nature of the duties to be performed by the officers having charge of the primary election. After referring to the provisions of the law applicable the court said that, when the vote at a primary election has been canvassed by the proper board and the proper certificate of election has been executed, the person receiving such certificate is at once in possession of the *quasi*-office of nominated candidate, and has the right to have his name put on the official ballot, as against all the world, until in some proper proceeding (as by *quo warranto*) it is decided that another person was in fact nominated. *State ex rel. Rinder v. Goff,* 129 Wis. 668, 109 N. W. 628.

While the right of the legislature to regulate the right of franchise is acknowledged, such regulation, however, cannot proceed to the extent where it materially impairs or destroys the right of the elector to exercise a free choice at the election. *State ex rel. Dithmar v. Bunnell,* 131 Wis. 198, 110 N. W. 177.

It being established that the power to adopt reasonable regulations in respect to the exercise of the right of franchise is in the legislature, it would seem that that suffi-

ciently establishes that there is no power of regulation in
the courts. The exercise of legislative power, while perhaps
the term itself is not capable of accurate definition, has to
do with the making of laws which may create, enlarge, or
limit rights and duties within constitutional limitations.
The judicial power which by the constitution is conferred
upon courts relates to the determination of controversies
arising in respect to rights or duties already existent. In
adjudicating as to rights and duties the courts declare but
do not make the law. Courts will therefore refrain from
exercising any jurisdiction in purely political matters where
personal rights are not involved. *Payne v. Emmerson,* 290
Ill. 490, 125 N. E. 329; *Green v. Mills,* 69 Fed. 852. See
note in 29 Yale Law Jour. 655; 13 Columbia Law Review,
526.

When, however, the legislature in the exercise of its
power has adopted regulatory laws specifying the manner
in which political rights shall be exercised, thus creating
new rights and extending new privileges, these rights and
privileges equally with other rights and privileges become
proper subjects for judicial action. *State ex rel. Cook v.
Houser,* 122 Wis. 534, 100 N. W. 964.

Confusion is likely to result from a failure to distinguish
between common-law rights which are within the protection
of constitutional restraints upon legislative authority and
mere legislative creations. As has been pointed out, the
right to a secret ballot may not be impaired, but the right
to a place upon an official ballot is a proper matter for
legislative regulation, and when the legislature has specified
the conditions upon which a nominee shall be entitled to a
place upon the official ballot it has created a right which may
be protected and enforced by the courts in the exercise of
judicial power. When the legislature has thus acted it has
removed the rights granted from the domain of the purely
political and placed them in the field of prescribed rights
and duties. In enforcing such prescribed rights and duties

the courts exercise no legislative power in adjudicating and determining the rights of parties in respect thereto, but do exercise judicial power. That the right of regulation is exclusively within the domain of the legislature is further established by the fact that the legislature may, if it choose to do so, erect an administrative tribunal with power to decide controversies arising in respect to such regulatory laws and make its decisions final. *State ex rel. Cook v. Houser,* 122 Wis. 534, 100 N. W. 964.

Bearing in mind the facts that the exercise of suffrage is a right guaranteed by the constitution to all qualified electors; that the elector at the election has a right of free choice as to the candidates for whom he will vote; that this right is subject to such legislative regulations as may be necessary to secure a full, fair, and free expression by the body of electors; that the right of franchise is a purely political right as to the exercise of which primarily the courts have no jurisdiction,—we proceed to an analysis of the situation presented by the facts in this case.

The legislature has prescribed, as it may lawfully do, that the name of the candidate who has received at the primary election a plurality of votes for the office of state senator shall be certified by the secretary of state to the county clerks of the various counties composing a senatorial district. It is made the duty of the county clerks to cause to be printed in the proper place upon the official ballot the name of the person so certified. A careful search of the entire body of statutory law fails to disclose any attempt on the part of the legislature to require that the name of a person so certified shall be that of a person eligible to hold the office for which he is a candidate. While the residence and qualifications of persons nominating another for a place upon the primary ballot are carefully prescribed, no such limitation is placed upon the right of a person to be a candidate for office. If, in the face of this legislative en-actment, the court may step in and assert that a candidate

26] AUGUST TERM, 1922. 479

State ex rel. Barber v. Circuit Court, 178 Wis. 468.

whose name has been thus certified and who by the clear language of the statute is entitled to a place upon the ballot may be deprived of that right because if elected he will be ineligible to hold the office for which he is a candidate, the court then prescribes the conditions, or at least one of the conditions, under which or in compliance with which a candidate may have his name 'appear upon the ballot. If the court should do this in the absence of legislative declaration to that effect, it would clearly invade the legislative field, and that, too, in respect to the exercise of a purely political right by an elector. The official ballot is a creation of the legislature unknown to the constitution. The right of a candidate to have his name appear thereon is one created by the legislature. Until the legislature, in the exercise of its power to regulate the exercise of the right of franchise, has prescribed as a part of the qualifications of a person who is seeking a place upon the official ballot that he shall be eligible to the office for which he is a candidate, neither the courts nor any administrative officer can so limit his right. To what extent the legislature itself may limit the right of a candidate for the legislature to appear upon the official ballot on the ground that he is not qualified to hold the office for which he is a candidate is not before us and is a question upon which we express no opinion.

. It is perfectly plain, in the light of the conditions which existed at the time of the adoption of the constitution and in view of the fact that the legislature has carefully refrained from lodging either with the judicial branch or with any administrative officer the power to limit free choice by the elector, that he still enjoys the right to vote for whom he will whether the person voted for be eligible or ineligible, qualified or disqualified. The legislature has declared that a plurality of a political party to which an elector belongs may designate as a candidate for public office whom they choose without regard to eligibility or qualifications. If the one so designated is in fact ineligible, the question of

eligibility becomes a judicial question after the election when he has received a plurality of votes and is seeking the title to the office for which he is a candidate. It has been so held in other jurisdictions. *Roussel v. Dornier,* 130 La. 367, 57 South. 1007, 39 L. R. A. N. s. 826; *Fuller v. Corey,* 18 Idaho, 558, 110 Pac. 1035; *Whitaker v. Swanner,* 121 Ky. 281, 89 S. W. 184.

As pointed out in a note to *Roussel v. Dornier* in 39 L. R. A. N. s. 826, there is jurisdiction nowhere, under such circumstances, to determine the eligibility of a nominee to office until after election, even though the non-eligibility be plainly disclosed.

In the case of a candidate for a legislative office, the determination of a controversy arising as to the election and qualification of a member is by the constitution committed to the house in which he seeks a seat.

In pointing out that the legislature has not required, as a condition precedent to the right of one to have his name printed upon the official ballot, that he be eligible to the office for which he is a candidate, it is not to be implied that the court is of the opinion that the legislature has been in any sense derelict in its duty. We are not required to justify legislative non-action in this respect, but many reasons for legislative inaction readily occur upon consideration of the subject matter. Election procedure must be certain and expeditious. If it should be required as a condition precedent to the right of a nominee to have his name appear upon the official ballot that he be qualified to hold the office for which he is a candidate, then authority must be lodged somewhere to determine that fact in the event of controversy. To place the power and authority to make such a determination in the hands of an administrative officer who might exercise it arbitrarily or erroneously might very possibly result in giving legal sanction to unjust and illegal acts. If power to review the acts of such an officer be granted, the time element becomes important and

unsatisfactory results might be obtained. The legislature no doubt has considered that the electorate itself would dispose of the matter by exercising care not to nominate as a candidate one not qualified to hold the office for which he is a candidate. The significant fact that this is the first time that a question of this kind has arisen since the adoption of the official ballot fully justifies the confidence which the legislature has reposed in the good sense and judgment of the people and leaves our election procedure plain and free from possible pitfalls.

On behalf of the respondents it is urged that, although the legislature has not declared as a condition that a nominee shall be eligible to the office for which he is a candidate, nevertheless it is implied. To this proposition we cannot assent. The only requirement found in the statute as a condition precedent to the right of a nominee to a place upon a ballot is that he shall file a declaration that if elected he will accept the office and qualify therefor. If it had been the intention of the legislature to require that there should be other conditions precedent, it is hardly conceivable that in the re-enactment and restatement of the law it could have been overlooked. As pointed out, there are ample reasons why the legislature has carefully refrained from imposing other conditions. The legislative purpose and plan can be fully executed without resorting to such an implied condition, and for the court to hold that such a condition is necessarily implied would be in effect to amend the law and thus exercise legislative rather than judicial power. Until the legislature specifically declares that there shall be other conditions precedent to the right of the nominee at the primary to have his name appear upon the official ballot, we must hold there are no other than the filing of the declaration referred to.

The question of whether or not the relator is eligible if elected to hold the office for which he is a candidate is not before us and we express no opinion and make no intima-

tion upon that subject. It sufficiently appears from the allegations of the complaint in the action begun in the circuit court for Marathon county that it is sought to deprive him of a right under the statute to which he is otherwise entitled, by imposing a condition precedent; that is, that he be eligible to the office if elected, which the legislature has not imposed. The legislature not having imposed that condition the court has no jurisdiction to do so, and he has the right to have his name appear upon the printed ballot at the regular election as a candidate of the Republican party for state senator in the Twenty-fifth senatorial district, there being no question as to the validity or regularity of the proceeding which resulted in the issuance of a certificate by the secretary of state to that effect. The circuit court for Marathon county is not asked to determine the eligibility of the relator to hold the office of state senator, but to restrain the county clerks of Lincoln and Marathon counties from placing relator's name upon the official ballot on the sole ground that he is not eligible to the office for which he is a candidate. This it has no jurisdiction to do.

The mandate of the court has been filed and the peremptory writ has been issued, to which reference has already been made.

ESCHWEILER, J. (*concurring*). The sole question presented in the action brought in the circuit court was one relating to the qualifications of the relator, *Mr. Barber*, to serve as a member of the state senate.

The language, "Each house shall be the *judge of the elections,* returns and *qualifications* of its own members," found in sec. 7, art. IV, Const., expressly makes the state senate the proper tribunal to determine all questions concerning *Mr. Barber's* qualifications for service in the office in question. It necessarily excludes the idea of any other tribunal passing on such a question, for, plainly, a decision

State ex rel. Barber v. Circuit Court, 178 Wis. 468.

by the judiciary one way or the other. on such question as was presented to the circuit court in this matter would not in any way or to the slightest degree bind or control the senate in its conclusive determination of the same question. Therefore the decision by the circuit court or by this court that *Mr. Barber* did not or did possess the proper qualifications would be an idle ceremony and a futile proceeding. This alone furnishes sufficient reason why the writ should issue as it has been allowed. I do not think we should seek further for reasons or wander beyond this ample and conclusive field.

Such constitutional provisions have been expressly held to be all-sufficient grounds for denying judicial relief in situations similar to the one here presented. *Allen v. Lelande,* 164 Cal. 56, 127 Pac. 643; *Att'y Gen. ex rel. Beers v. Board of Canvassers,* 155 Mich. 44, 118 N. W. 584; *Sutherland v. Miller,* 79 W. Va. 796, 91 S. E. 993, L. R. A. 1917D, 1040, 1046, and note on p. 1046; *State ex rel. Boulware v. Porter,* 55 Mont. 471, 178 Pac. 832; *Covington v. Buffett,* 90 Md. 569, 45 Atl. 204; *Britt v. Board of Canvassers,* 172 N. C. 797, 802; 90 S. E. 1005. The wide scope of such conclusive control is indicated in the case of *Dinan v. Swig,* 223 Mass. 516, 112 N. E. 91.

The jurisdiction of the legislature to determine just such a question has been repeatedly recognized by this court as exclusive. *State ex rel. McDill v. Board of State Canvassers,* 36 Wis. 498, 505; *State ex rel. Anderton v. Kempf,* 69 Wis. 470, 475, 34 N. W. 226; *State ex rel. Kustermann v. Board of State Canvassers,* 145 Wis. 294, 311, 315, 324, 130 N. W. 489, citing many cases.

Just what is now declared cannot be done by the judiciary was nevertheless done in *State ex rel. Bancroft v. Frear,* 144 Wis. 79, 84, 128 N. W. 1068, where the secretary of state was directed to place the relator's name on the official ballot as the Republican candidate for attorney general as against the avowed intention of such official to insert the

name of another who claimed a right to succeed a candidate who died prior to the primary but whose name received more votes than did the relator there.    This court there determined who was eligible as the party candidate, and did not relegate the question to a post-election contest.

I am not at present prepared to join in saying that the court should in no case intervene to prevent a proposed candidate for an office, other than member of the legislature, from having his name go upon a ballot with the particular advantages that might, and presumably do, accrue from being upon such ticket under certain specific party designation, and thereby creating a disadvantage to some other person seeking, and perhaps legally entitled, to have his own name substituted in such place.

For instance, sec. 12, art. IV, Const., provides: "No member of the legislature shall, during the term for which he was elected, be appointed *or elected* to any civil office in the state which shall have been created, or the emoluments of which shall have been increased, during the term for which he was elected."    The opinion as now written forecloses for the future any right to appeal to the courts to prevent a then present member of the legislature from having his name placed in a certain party column for an office created during his term as legislator.    The constitutional prohibition is against being *elected* to such office.    If it be a foregone conclusion that votes for him when cast are null and void, I can see no good reason why the court might not properly say that his name shall not usurp a position, and consequent advantage, on a ballot that legally belongs to someone else who properly appeals to the court for protection of such right and advantage, such as was done in *State ex rel. Bancroft v. Frear,* 144 Wis. 79, 128 N. W. 1068.    To have one's name go on an official ballot and in the proper place is recognized as a right entitled to protection by the courts.    *State ex rel. Rinder v. Goff,* 129 Wis. 668,

683, 109 N. W. 628, 9 L. R. A. N. S. 916; *State ex rel. Cook. v. Houser,* 122 Wis. 534, 557, 100 N. W. 964; *Withey v. Board of State Canvassers,* 194 Mich. 564, 161 N. W. 780.

Although agreeing with the result here reached, I cannot agree with the reasons for it as stated in the opinion.

I am authorized to state that Mr. Justice DOERFLER agrees with this concurring opinion.